Summary
6/5/2018 4:35:09 PM

Differences exist between documents.

**New Document:**
17-155_new
28 pages (225 KB)
6/5/2018 4:35:06 PM
Used to display results.

**Old Document:**
17-155
28 pages (182 KB)
6/5/2018 4:35:06 PM

Get started: first change is on page 21.

No pages were deleted

**How to read this report**

Highlight indicates a change.
Deleted indicates deleted content.
▲ indicates pages were changed.
⬌ indicates pages were moved.

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## HUGHES *v.* UNITED STATES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 17–155. Argued March 27, 2018—Decided June 4, 2018

In *Freeman* v. *United States*, 564 U. S. 522, this Court considered whether a prisoner who had been sentenced under a plea agreement authorized by the Federal Rules of Criminal Procedure could have his sentence reduced under 18 U. S. C. §3582(c)(2) when his Federal Guidelines sentencing range was lowered retroactively. No single interpretation or rationale commanded a majority, however. Some Courts of Appeals, turning to *Marks* v. *United States*, 430 U. S. 188, for guidance, adopted the reasoning of JUSTICE SOTOMAYOR's opinion concurring in the judgment. Others interpreted *Marks* differently and adopted the plurality's reasoning. Because this Court can now resolve the substantive, sentencing issue discussed in *Freeman,* it is unnecessary to reach questions regarding the proper application of *Marks*.

The Sentencing Reform Act of 1984 authorizes the United States Sentencing Commission to establish, and retroactively amend, Sentencing Guidelines. Though the Guidelines are only advisory, see *United States* v. *Booker*, 543 U. S. 220, a district court must consult them during sentencing, *id.,* at 264, along with other factors specified in 18 U. S. C. §3553(a), including "the need to avoid unwarranted sentence disparities," §3553(a)(6). When an amendment applies retroactively, district courts may reduce the sentences of prisoners whose sentences were "based on a sentencing range that has subsequently been lowered by the Sentencing Commission." §3582(c)(2).

This case concerns the issue whether a defendant may seek relief under §3582(c)(2) if he entered a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C) (Type-C agreement), which permits the defendant and the Government to "agree that a specific sentence or sentencing range is the appropriate disposition of the case," and

"binds the court [to the agreed-upon sentence] once [it] accepts the plea agreement." In making its decision, the district court must consider the Sentencing Guidelines. And it may not accept the agreement unless the sentence is within the applicable Guidelines range, or it is outside that range for justifiable reasons specifically set out.

After petitioner Erik Hughes was indicted on drug and gun charges, he and the Government negotiated a Type-C plea agreement, which stipulated that Hughes would receive a sentence of 180 months but did not refer to a particular Guidelines range. Hughes pleaded guilty. At his sentencing hearing, the District Court accepted the agreement and sentenced him to 180 months. In so doing, it calculated Hughes' Guidelines range as 188 to 235 months and determined that the sentence was in accordance with the Guidelines and other factors the court was required to consider. Less than two months later, the Sentencing Commission adopted, and made retroactive, an amendment that had the effect of reducing Hughes' sentencing range to 151 to 188 months. The District Court denied Hughes' motion for a reduced sentence under §3582(c)(2), and the Eleventh Circuit affirmed. Both courts concluded that, under the *Freeman* concurrence, Hughes was ineligible for a reduced sentence because his plea agreement did not expressly rely on a Guidelines range.

*Held:*

1. A sentence imposed pursuant to a Type-C agreement is "based on" the defendant's Guidelines range so long as that range was part of the framework the district court relied on in imposing the sentence or accepting the agreement. Pp. 7–14.

(a) A principal purpose of the Sentencing Guidelines is to promote sentencing uniformity. But in the aftermath of *Freeman*, a defendant's eligibility for a reduced sentence under §3582(c)(2) turns on the Circuit in which the case arises. Even within Circuits that follow the *Freeman* concurrence, unwarranted disparities have resulted depending on whether a defendant's Type-C agreement has a specific-enough reference to a Guidelines range. This Court's precedents since *Freeman* have confirmed that the Guidelines remain the foundation of federal sentencing decisions. See, *e.g., Peugh* v. *United States*, 569 U. S. 530; *Molina-Martinez* v. *United States*, 578 U. S. ___. Pp. 7–9.

(b) A district court imposes a sentence that is "based on" a Guidelines range for purposes of §3582(c)(2) if the range was a basis for the court's exercise of discretion in imposing a sentence. Given the standard legal definition of "base," there will be no question in the typical case that the defendant's Guidelines range was a basis for his sentence. A district court is required to calculate and consider a de-

fendant's Guidelines range in every case. §3553(a). Indeed, the Guidelines are "the starting point for every sentencing calculation in the federal system." *Peugh, supra,* at 542. Thus, in general, §3582(c)(2) allows district courts to reconsider a prisoner's sentence based on a new starting point—that is, a lower Guidelines range—and determine whether a reduction is appropriate.

A sentence imposed pursuant to a Type-C agreement is no exception to the general rule that a defendant's Guidelines range is the starting point and a basis for his ultimate sentence. The Government and the defendant may agree to a specific sentence, but the Sentencing Guidelines prohibit district courts from accepting Type-C agreements without first evaluating the recommended sentence in light of the defendant's Guidelines range. So in the usual case the court's acceptance of a Type-C agreement and the sentence to be imposed pursuant to that agreement are "based on" the defendant's Guidelines range. Since the Guidelines are a district court's starting point, when the Commission lowers the range, the defendant will be eligible for relief under §3582(c)(2) absent clear demonstration, based on the record as a whole, that the court would have imposed the same sentence regardless of the Guidelines.

This interpretation furthers §3582(c)(2)'s purpose, as well as the broader purposes of the Sentencing Reform Act. It is also reinforced by *Molina-Martinez* and *Peugh*, which both confirm that the Guidelines remain a basis for almost all federal sentences. Experience has shown that, although the interpretation proffered by JUSTICE SOTOMAYOR's concurring opinion in *Freeman* could be one permissible reading of §3582(c)(2), as a systemic, structural matter the system Congress put in place is best implemented by the interpretation confirmed in this case. Pp. 9–12.

(c) The Government's counterarguments—that allowing defendants with Type-C agreements to seek reduced sentences under §3582(c)(2) would deprive the Government of a benefit of its bargain, namely, the defendant's agreement to a particular sentence; and that allowing courts to reduce the sentences of defendants like Hughes would be inconsistent with one of the Commission's policy statements—are unpersuasive. Pp. 12–14.

2. Hughes is eligible for relief under §3582(c)(2). The District Court accepted his Type-C agreement after concluding that a 180-month sentence was consistent with the Guidelines, and then calculated Hughes' sentencing range and imposed a sentence it deemed "compatible" with the Guidelines. The sentencing range was thus a basis for the sentence imposed. And that range has since been lowered by the Commission. The District Court has discretion to decide whether to reduce Hughes' sentence after considering the §3553(a)

Syllabus

factors and the Commission's relevant policy statements. P. 14.

849 F. 3d 1008, reversed and remanded.

KENNEDY, J., delivered the opinion of the Court, in which GINSBURG, BREYER, SOTOMAYOR, KAGAN, and GORSUCH, JJ., joined. SOTOMAYOR, J., filed a concurring opinion. ROBERTS, C. J., filed a dissenting opinion, in which THOMAS and ALITO, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

——————

No. 17–155

——————

## ERIK LINDSEY HUGHES, PETITIONER *v.* UNITED STATES

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

[June 4, 2018]

JUSTICE KENNEDY delivered the opinion of the Court.

The proper construction of federal sentencing statutes and the Federal Rules of Criminal Procedure can present close questions of statutory and textual interpretation when implementing the Federal Sentencing Guidelines. Seven Terms ago the Court considered one of these issues in a case involving a prisoner's motion to reduce his sentence, where the prisoner had been sentenced under a plea agreement authorized by a specific Rule of criminal procedure. *Freeman* v. *United States*, 564 U. S. 522 (2011). The prisoner maintained that his sentence should be reduced under 18 U. S. C. §3582(c)(2) when his Guidelines sentencing range was lowered retroactively. 564 U. S., at 527–528 (plurality opinion).

No single interpretation or rationale in *Freeman* commanded a majority of the Court. The courts of appeals then confronted the question of what principle or principles considered in *Freeman* controlled when an opinion by four Justices and a concurring opinion by a single Justice had allowed a majority of this Court to agree on the judgment in *Freeman* but not on one interpretation or rule

that courts could follow in later cases when similar questions arose under the same statute and Rule.

For guidance courts turned to this Court's opinion in *Marks* v. *United States*, 430 U. S. 188 (1977). Some courts interpreted *Marks* as directing them to follow the "narrowest" opinion in *Freeman* that was necessary for the judgment in that case; and, accordingly, they adopted the reasoning of the opinion concurring in the judgment by JUSTICE SOTOMAYOR. See *United States* v. *Rivera-Martinez*, 665 F. 3d 344, 348 (CA1 2011); *United States* v. *Thompson*, 682 F. 3d 285, 290 (CA3 2012); *United States* v. *Brown*, 653 F. 3d 337, 340, n. 1 (CA4 2011); *United States* v. *Benitez*, 822 F. 3d 807, 811 (CA5 2016); *United States* v. *Smith*, 658 F. 3d 608, 611 (CA6 2011); *United States* v. *Dixon*, 687 F. 3d 356, 359 (CA7 2012); *United States* v. *Browne*, 698 F. 3d 1042, 1045 (CA8 2012); *United States* v. *Graham*, 704 F. 3d 1275, 1277–1278 (CA10 2013).

In contrast, the Courts of Appeals for the District of Columbia and Ninth Circuits held that no opinion in *Freeman* provided a controlling rule because the reasoning in the concurrence was not a "logical subset" of the reasoning in the plurality. *United States* v. *Davis*, 825 F. 3d 1014, 1021–1022 (CA9 2016) (en banc); *United States* v. *Epps*, 707 F. 3d 337, 350 (CADC 2013). Those courts have adopted the plurality's opinion as the most persuasive interpretation of §3582(c)(2). *Davis, supra,* at 1026; *Epps, supra,* at 351.

To resolve these differences over the proper application of *Marks* and the proper interpretation of §3582(c)(2), the Court granted certiorari in the present case. 583 U. S. ___ (2017). The first two questions, relating to *Marks*, are as follows: (1) "Whether this Court's decision in *Marks* means that the concurring opinion in a 4–1–4 decision represents the holding of the Court where neither the plurality's reasoning nor the concurrence's reasoning is a logical subset of the other"; and (2) "Whether, under *Marks*, the

lower courts are bound by the four-Justice plurality opinion in *Freeman*, or, instead, by JUSTICE SOTOMAYOR's separate concurring opinion with which all eight other Justices disagreed." Pet. for Cert. i.

The third question is directed to the underlying statutory issue in this case, the substantive, sentencing issue the Court discussed in the three opinions issued in *Freeman*. That question is: "Whether, as the four-Justice plurality in *Freeman* concluded, a defendant who enters into a Fed. R. Crim. P. 11(c)(1)(C) plea agreement is generally eligible for a sentence reduction if there is a later, retroactive amendment to the relevant Sentencing Guidelines range." Pet. for Cert. ii.

Taking instruction from the cases decided in the wake of *Freeman* and the systemic concerns that have arisen in some Circuits, and considering as well the arguments of the parties as to question three, a majority of the Court in the instant case now can resolve the sentencing issue on its merits. So it will be unnecessary to consider questions one and two despite the extensive briefing and careful argument the parties presented to the Court concerning the proper application of *Marks*. The opinion that follows resolves the sentencing issue in this case; and, as well, it should give the necessary guidance to federal district courts and to the courts of appeals with respect to plea agreements of the kind presented here and in *Freeman*.

With that explanation, the Court now turns to the circumstances of this case and the sentencing issue it presents.

## I
### A

Under the Sentencing Reform Act of 1984, the United States Sentencing Commission establishes Sentencing Guidelines based on the seriousness of a defendant's offense and his criminal history. *Dillon* v. *United States*,

560 U. S. 817, 820 (2010). In combination, these two factors yield a range of potential sentences for a district court to choose from in sentencing a particular defendant. "The Sentencing Guidelines provide the framework for the tens of thousands of federal sentencing proceedings that occur each year." *Molina-Martinez* v. *United States*, 578 U. S. ___, ___ (2016) (slip op., at 2).

After this Court's decision in *United States* v. *Booker*, 543 U. S. 220 (2005), the Guidelines are advisory only. But a district court still "must consult those Guidelines and take them into account when sentencing." *Id.*, at 264; see also 18 U. S. C. §3553(a)(4). Courts must also consider various other sentencing factors listed in §3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." §3553(a)(6).

The Act requires the Commission to review and revise the Guidelines from time to time. 28 U. S. C. §994(o). When the Commission amends the Guidelines in a way that reduces the Guidelines range for "a particular offense or category of offenses," the Commission must "specify in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for the offense may be reduced." §994(u). In this way the Act requires the Commission to decide whether amendments to the Guidelines should have retroactive effect.

If an amendment applies retroactively, the Act authorizes district courts to reduce the sentences of prisoners who were sentenced based on a Guidelines range that would have been lower had the amendment been in place when they were sentenced. 18 U. S. C. §3582(c)(2). Specifically, §3582(c)(2) provides:

"[I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sen-

tencing Commission pursuant to 28 U. S. C. §994(o), . . . the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."

### B

The controlling issue here is whether a defendant may seek relief under §3582(c)(2) if he entered a plea agreement specifying a particular sentence under Federal Rule of Criminal Procedure 11(c)(1)(C). This kind of plea agreement is sometimes referred to as a "Type-C agreement."

In a Type-C agreement the Government and a defendant "agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply," and "such a recommendation or request binds the court once the court accepts the plea agreement." Rule 11(c)(1)(C). When the Government and a defendant enter a Type-C agreement, the district court has three choices: It "may accept the agreement, reject it, or defer a decision until the court has reviewed the presentence report." Rule 11(c)(3)(A). If the court rejects the agreement, the defendant may withdraw his guilty plea. Rule 11(c)(5)(B).

In deciding whether to accept an agreement that includes a specific sentence, the district court must consider the Sentencing Guidelines. The court may not accept the agreement unless the court is satisfied that "(1) the agreed sentence is within the applicable guideline range; or (2)(A) the agreed sentence is outside the applicable guideline range for justifiable reasons; and (B) those reasons are set forth with specificity." United States Sentencing Commission, Guidelines Manual §6B1.2(c) (Nov. 2016) (USSG).

"[T]he decision whether to accept the agreement will often be deferred until the sentencing hearing," which means that "the decision whether to accept the plea agreement will often be made at the same time that the defendant is sentenced." *United States* v. *Hyde*, 520 U. S. 670, 678 (1997).

## C

### 1

In 2013 petitioner Erik Hughes was indicted on drug and gun charges for his participation in a conspiracy to distribute methamphetamine. About four months later, the Government and Hughes negotiated a Type-C plea agreement. Hughes agreed to plead guilty to two of the four charges (conspiracy to distribute methamphetamine and being a felon in possession of a gun); and in exchange the Government agreed to dismiss the other two charges and to refrain from filing an information giving formal notification to the District Court of his prior drug felonies. If the Government had filed the information, Hughes would have been subject to a mandatory sentence of life in prison. See 21 U. S. C. §§841(b)(1)(A), 851(a). The agreement stipulated that Hughes would receive a sentence of 180 months, but it did not refer to any particular Guidelines range.

Hughes entered his guilty plea in December 2013. The District Court accepted the plea at that time, but it deferred consideration of the plea agreement (and hence the stipulated 180-month sentence) until sentencing.

Three months later, at the sentencing hearing, the District Court accepted the agreement and sentenced Hughes to 180 months in prison. The court stated that it had "considered the plea agreement [and] the sentencing guidelines, particularly the provisions of [§3553(a)]," and that it would "accept and approve the binding plea agreement." App. to Pet. for Cert. 32a–33a. The court calcu-

lated Hughes' Guidelines range as 188 to 235 months in prison and heard statements from Hughes' daughter, mother, and Hughes himself. *Id.*, at 37a–43a. When it imposed the agreed 180-month sentence the court reiterated that it was "a reasonable sentence in this case compatible with the advisory United States Sentencing Guidelines but in accordance with the mandatory matters the Court is required to consider in ultimately determining a sentence." *Id.*, at 44a, 47a.

### 2

Less than two months after the District Court sentenced Hughes, the Sentencing Commission adopted amendment 782 to the Guidelines. USSG App. C, Amdt. 782 (Supp. Nov. 2012–Nov. 2016). The amendment reduced the base offense level by two levels for most drug offenses. The Commission later made amendment 782 retroactive for defendants who, like Hughes, already had been sentenced under the higher offense levels. Amdt. 788. Under the revised Guidelines, Hughes' sentencing range is 151 to 188 months—about three to four years lower than the range in effect when he was sentenced.

Hughes filed a motion for a reduced sentence under §3582(c)(2). The District Court denied the motion, concluding that Hughes is ineligible for relief; and the Court of Appeals for the Eleventh Circuit affirmed. 849 F. 3d 1008, 1016 (2017); App. to Pet. for Cert. 28a. Both courts concluded that the *Freeman* concurrence stated the holding of this Court under *Marks*, and that under the concurrence's interpretation Hughes was ineligible for a reduced sentence because his plea agreement did not expressly rely on a Guidelines range. 849 F. 3d, at 1015; App. to Pet. for Cert. 25a. This Court granted certiorari. 583 U. S. ___.

## II

A principal purpose of the Sentencing Guidelines is to

promote "uniformity in sentencing imposed by different federal courts for similar criminal conduct." *Molina-Martinez*, 578 U. S., at ___ (slip op., at 2) (internal quotation marks and alteration omitted; emphasis deleted). Yet in the aftermath of *Freeman*, a defendant's eligibility for a reduced sentence under §3582(c)(2) turns on the Circuit in which the case arises. Further, even within Circuits that follow the *Freeman* concurrence, unwarranted disparities have resulted depending on the fortuity of whether a defendant's Type-C agreement includes a specific-enough reference to a Guidelines range. See Brief for National Association of Criminal Defense Lawyers et al. as *Amici Curiae* 13–20. In some cases defendants have been held ineligible for relief even where the sentencing hearing makes it crystal clear that the Government and the defendant agreed to a Guidelines sentence and the district court imposed one. See, *e.g.*, *United States* v. *McNeese*, 819 F. 3d 922, 929 (CA6 2016).

In addition this Court's precedents since *Freeman* have further confirmed that the Guidelines remain the foundation of federal sentencing decisions. In *Peugh* v. *United States*, 569 U. S. 530 (2013), for example, the Court held that the *Ex Post Facto* Clause prohibits retroactive application of amended Guidelines that increase a defendant's sentencing range. *Id.*, at 544. The Court reasoned that, *Booker* notwithstanding, the Guidelines remain "the lodestone of sentencing." 569 U. S., at 544. And in *Molina-Martinez*, the Court held that in the ordinary case a defendant suffers prejudice from a Guidelines error because of "the systemic function of the selected Guidelines range." 578 U. S., at ___ (slip op., at 10).

"The post-*Booker* federal sentencing scheme aims to achieve uniformity by ensuring that sentencing decisions are anchored by the Guidelines." *Peugh*, *supra*, at 541. In this context clarity and consistency are essential. To resolve the uncertainty that resulted from this Court's

divided decision in *Freeman*, the Court now holds that a sentence imposed pursuant to a Type-C agreement is "based on" the defendant's Guidelines range so long as that range was part of the framework the district court relied on in imposing the sentence or accepting the agreement.

## A

As already mentioned, §3582(c)(2) authorizes a district court to reduce a defendant's sentence if the defendant "has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." A district court imposes a sentence that is "based on" a Guidelines range if the range was a basis for the court's exercise of discretion in imposing a sentence. To "base" means "[t]o make, form, or serve as a foundation for," or "[t]o use (something) as the thing from which something else is developed." Black's Law Dictionary 180 (10th ed. 2014). Likewise, a "base" is "[t]he starting point or foundational part of something," or "[a] point, part, line, or quantity from which a reckoning or conclusion proceeds." *Ibid.*; see also *ibid.* (similarly defining "basis").

In the typical sentencing case there will be no question that the defendant's Guidelines range was a basis for his sentence. The Sentencing Reform Act requires a district court to calculate and consider a defendant's Guidelines range in every case. 18 U. S. C. §3553(a). Indeed, the Guidelines are "the starting point for every sentencing calculation in the federal system." *Peugh, supra*, at 542; see also *Molina-Martinez*, 578 U. S., at \_\_\_ (slip op., at 9) ("The Court has made clear that the Guidelines are to be the sentencing court's starting point and initial benchmark" (internal quotation marks and alteration omitted)). "Even if the sentencing judge sees a reason to vary from the Guidelines, if the judge uses the sentencing range as

the beginning point to explain the decision to deviate from it, then the Guidelines are in a real sense the basis for the sentence." *Ibid.* (internal quotation marks omitted; emphasis deleted). In general, §3582(c)(2) allows district courts to reconsider a prisoner's sentence based on a new starting point—that is, a lower Guidelines range—and determine whether a reduction in the prisoner's sentence is appropriate.

A sentence imposed pursuant to a Type-C agreement is no exception to the general rule that a defendant's Guidelines range is both the starting point and a basis for his ultimate sentence. Although in a Type-C agreement the Government and the defendant may agree to a specific sentence, that bargain is contingent on the district court accepting the agreement and its stipulated sentence. *Freeman*, 564 U. S., at 529–530. The Sentencing Guidelines prohibit district courts from accepting Type-C agreements without first evaluating the recommended sentence in light of the defendant's Guidelines range. USSG §6B1.2(c). So in the usual case the court's acceptance of a Type-C agreement and the sentence to be imposed pursuant to that agreement are "based on" the defendant's Guidelines range.

To be sure, the Guidelines are advisory only, and so not every sentence will be consistent with the relevant Guidelines range. See *Koons* v. *United States*, *post*, at 5 (defendants' Guidelines ranges "clearly did not" form a basis of the ultimate sentences). For example, in *Koons* the Court today holds that five defendants' sentences were not "based on" subsequently lowered Guidelines ranges because in that case the Guidelines and the record make clear that the sentencing judge "discarded" their sentencing ranges "in favor of mandatory minimums and substantial-assistance factors." *Post*, at 5–6; see also *Molina-Martinez*, *supra*, at ___ (slip op., at 11) ("The record in a case may show, for example, that the district court

thought the sentence it chose was appropriate irrespective of the Guidelines range").

   If the Guidelines range was not "a relevant part of the analytic framework the judge used to determine the sentence or to approve the agreement," *Freeman, supra*, at 530, then the defendant's sentence was not based on that sentencing range, and relief under §3582(c)(2) is unavailable. And that is so regardless of whether a defendant pleaded guilty pursuant to a Type-C agreement or whether the agreement itself referred to a Guidelines range. The statutory language points to the reasons for the sentence that the district court imposed, not the reasons for the parties' plea agreement. Still, cases like *Koons* are a narrow exception to the general rule that, in most cases, a defendant's sentence will be "based on" his Guidelines range. In federal sentencing the Guidelines are a district court's starting point, so when the Commission lowers a defendant's Guidelines range the defendant will be eligible for relief under §3582(c)(2) absent clear demonstration, based on the record as a whole, that the court would have imposed the same sentence regardless of the Guidelines. See *Koons, post*, at 4–6.

   This interpretation furthers §3582(c)(2)'s purpose, as well as the broader purposes of the Sentencing Reform Act. "The Act aims to create a comprehensive sentencing scheme in which those who commit crimes of similar severity under similar conditions receive similar sentences." *Freeman*, 564 U. S., at 533. "Section 3582(c)(2) contributes to that goal by ensuring that district courts may adjust sentences imposed pursuant to a range that the Commission concludes [is] too severe, out of step with the seriousness of the crime and the sentencing ranges of analogous offenses, and inconsistent with the Act's purposes." *Ibid.* And there is no reason a defendant's eligibility for relief should turn on the form of his plea agreement.

Two cases decided after *Freeman* now reinforce this proposition. See *Molina-Martinez*, 578 U. S., at ___–___ (slip op., at 9–11); *Peugh*, 569 U. S., at 541–544. These cases confirm that the Guidelines remain a basis for almost all federal sentences. In *Peugh*, the Court recognized that "[e]ven after *Booker* rendered the Sentencing Guidelines advisory, district courts have in the vast majority of cases imposed either within-Guidelines sentences or sentences that depart downward from the Guidelines on the Government's motion." *Id.*, at 543. And in *Molina-Martinez*, the Court explained that "[t]he Commission's statistics demonstrate the real and pervasive effect the Guidelines have on sentencing." 578 U. S., at ___ (slip op., at 10). In short, experience has shown that, although the interpretation proffered by JUSTICE SOTOMAYOR's concurring opinion in *Freeman* could be one permissible reading of §3582(c)(2), the system Congress put in place is best implemented, as a systemic, structural matter, by the interpretation confirmed in the instant case.

B

In response, the Government largely recycles arguments that a majority of this Court rejected in *Freeman*. For example, the Government contends that allowing defendants who enter Type-C agreements to seek reduced sentences under §3582(c)(2) would deprive the Government of one of the benefits of its bargain—namely, the defendant's agreement to a particular sentence. But that has nothing to do with whether a defendant's sentence was based on the Sentencing Guidelines under §3582(c)(2). *Freeman*, 564 U. S., at 531; see also *id.*, at 540 (opinion of SOTOMAYOR, J.). And in any event, "[w]hat is at stake in this case is a defendant's eligibility for relief, not the extent of that relief." *Id.*, at 532 (plurality opinion). Even if a defendant is eligible for relief, before a district court grants a reduction it must consider "the factors set forth in

section 3553(a) to the extent that they are applicable" and the Commission's "applicable policy statements." §3582(c)(2). The district court can consider the benefits the defendant gained by entering a Type-C agreement when it decides whether a reduction is appropriate (or when it determines the extent of any reduction), "for the statute permits but does not require the court to reduce a sentence." *Freeman*, *supra*, at 532.

The Government also contends that allowing courts to reduce the sentences of defendants like Hughes would be inconsistent with the Commission's policy statement in USSG §1B1.10, which provides that when a district court modifies a sentence under §3582(c)(2) it "shall substitute only the [retroactive] amendments listed in subsection (d) for the corresponding guidelines provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected." USSG §1B1.10(b)(1). According to the Government, no "guidelines provisions" are "applied" when a defendant enters a Type-C agreement because at the moment of sentencing—that is, after the court has already accepted the agreement—Rule 11 prohibits the court from imposing any sentence other than the one the parties bargained for.

This argument fails for at least two reasons. First, the Government's interpretation of §1B1.10 depends on an artificial distinction between a court's decision to accept a Type-C agreement and its decision to impose the agreed-upon sentence. As explained above, a district court must consider the defendant's "applicable Guidelines range" when it decides whether to accept or reject the agreement, USSG §6B1.2(c)—often, as here, at the sentencing hearing, after the court has reviewed the presentence report. And as the Government itself points out, once the district court accepts the agreement, the agreed-upon sentence is the only sentence the court may impose. Thus, there is no meaningful difference between a court's decision to accept

a Type-C agreement that includes a particular sentence
and the court's decision (sometimes, as here, just minutes
later) to impose that sentence.

Second, the Commission's policy statement "seeks to
isolate whatever marginal effect the since-rejected Guide-
line had on the defendant's sentence." *Freeman*, 564 U. S.,
at 530. Accordingly, relief under §3582(c)(2) should be
available to permit the district court to reconsider a prior
sentence to the extent the prisoner's Guidelines range was
a relevant part of the framework the judge used to accept
the agreement or determine the sentence. *Ibid.* If the
district court concludes that it would have imposed the
same sentence even if the defendant had been subject to
the lower range, then the court retains discretion to deny
relief.

C

In this case the District Court accepted Hughes' Type-C
agreement after concluding that a 180-month sentence
was consistent with the Sentencing Guidelines. App. to
Pet. for Cert. 33a. The court then calculated Hughes'
sentencing range and imposed a sentence that the court
deemed "compatible" with the Guidelines. *Id.,* at 36a, 47a.
Thus, the sentencing range was a basis for the sentence
that the District Court imposed. That range has "subse-
quently been lowered by the Sentencing Commission," so
Hughes is eligible for relief under §3582(c)(2). The Court
expresses no view as to whether the District Court should
exercise its discretion to reduce Hughes' sentence after
considering the §3553(a) factors and the Commission's
relevant policy statements. See 18 U. S. C. §3582(c)(2).

\*     \*     \*

For these reasons, the judgment of the Court of Appeals
is reversed, and the case is remanded for further proceed-
ings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 17–155

_____

## ERIK LINDSEY HUGHES, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

[June 4, 2018]

JUSTICE SOTOMAYOR, concurring.

In *Freeman* v. *United States*, 564 U. S. 522 (2011), this Court confronted the same question it definitively resolves today: whether criminal defendants who enter into plea agreements under Federal Rule of Criminal Procedure 11(c)(1)(C) are eligible for sentencing reductions under 18 U. S. C. §3582(c)(2). *Freeman* ended in a 4–1–4 decision that left lower courts confused as to whether the plurality or the concurring opinion controlled.

The plurality of four Justices in *Freeman* concluded that defendants who plead guilty pursuant to a so-called "Type-C agreement" may be eligible for a sentence reduction under §3582(c)(2) because Type-C sentences are "based on the Guidelines" "to whatever extent the sentencing range in question was a relevant part of the analytic framework the judge used to determine the sentence or to approve the agreement." 564 U. S., at 530. Four Justices dissented. *Id.,* at 544–551 (opinion of ROBERTS, C. J.). They would have held that a defendant who pleads guilty pursuant to a Type-C agreement is categorically ineligible for a sentence reduction under §3582(c)(2) because such a sentence is always "based on" the plea agreement, and not on the Guidelines. *Id.*, at 544–548.

Parting ways with all eight of my colleagues, I concurred only in the judgment. *Id.,* at 534–544. I held the view that sentences imposed under Type-C agreements are typically "based on" the agreements themselves, not on the Guidelines. *Id.,* at 535–536. "In the (C) agreement context," I explained, "it is the binding plea agreement that is the foundation for the term of imprisonment to which the defendant is sentenced." *Id.,* at 535. But, in my view, that general rule was not absolute. Rejecting the categorical rule adopted by the dissent, I instead concluded that some Type-C sentences were "based on" the Guidelines and thus eligible for sentencing reductions under §3582(c)(2). *Id.,* at 538–539. Specifically, I clarified that §3582(c)(2) relief was available in cases where the Type-C agreement "call[s] for the defendant to be sentenced within a particular Guidelines sentencing range," or in cases where the "plea agreement . . . provide[s] for a specific term of imprisonment . . . but also make[s] clear that the basis for the specified term is a Guidelines sentencing range." *Id.*, at 538–539. Because Freeman's agreement presented one such case, I agreed with the plurality that he was eligible for a sentence reduction under §3582(c)(2). See *id.,* at 542–544.

I continue to believe that my *Freeman* concurrence sets forth the most convincing interpretation of §3582(c)(2)'s statutory text. But I also acknowledge that my concurrence precipitated a 4–1–4 decision that left significant confusion in its wake. Because *Freeman*'s fractured disposition provided insufficient guidance, courts of appeals have struggled over whether they should follow the *Freeman* plurality or my separate concurrence. See *ante,* at 2–3. As a result, "in the aftermath of *Freeman*, a defendant's eligibility for a reduced sentence under §3582(c)(2) turns on the Circuit in which the case arises." *Ante,* at 8. And, "even within Circuits

that follow the *Freeman* concurrence, unwarranted disparities have resulted depending on the fortuity of whether a defendant's Type-C agreement includes a specific-enough reference to a Guidelines range." *Ibid.*

The integrity and legitimacy of our criminal justice system depend upon consistency, predictability, and evenhandedness. Regrettably, the divided decisions in *Freeman*, and my concurrence in particular, have done little to foster those foundational principles. Quite the opposite, my individual views, which "[n]o other Justice . . . shares," have contributed to ongoing discord among the lower courts, sown confusion among litigants, and left "the governing rule uncertain." *Arizona* v. *Gant*, 556 U. S. 332, 354 (2009) (Scalia, J., concurring); see Brief for National Association of Criminal Defense Lawyers et al. as *Amici Curiae* 3–27 (arguing that the *Freeman* concurrence leads to unpredictable and inconsistent results).

I therefore join the majority in full because doing so helps to ensure clarity and stability in the law and promotes "uniformity in sentencing imposed by different federal courts for similar criminal conduct." *Molina-Martinez* v. *United States*, 578 U. S. ___, ___ (2016) (slip op., at 2) (internal quotation marks and alteration omitted; emphasis deleted). Today's majority opinion charts a clear path forward: It mitigates the inconsistencies and disparities occasioned (at least in part) by my concurrence. It ensures that similarly situated defendants are subject to a uniform legal rule. It studiously adheres to "this Court's precedents since *Freeman*," which firmly establish "that the Guidelines remain the foundation of federal sentencing decisions." *Ante*, at 8; see *ante,* at 12 (discussing *Molina-Martinez*, 578 U. S. ___; *Peugh* v. *United States*, 569 U. S. 530 (2013)). And it aligns more closely than the dissent does with the view I

articulated in *Freeman*.[1]  For all these reasons, I now lend my vote to the majority and accede in its holding "that a sentence imposed pursuant to a Type-C agreement is 'based on' the defendant's Guidelines range so long as that range was part of the framework the district court relied on in imposing the sentence or accepting the agreement." *Ante,* at 9.[2]

———————

[1] Unlike the majority, the dissent's position is incompatible with my view in *Freeman* (and in this case) that criminal defendants who plead guilty under Type-C agreements are not categorically ineligible for relief under §3582(c)(2).  See 564 U. S., at 538–540 (SOTOMAYOR, J., concurring in judgment).  Accordingly, I continue to "reject the categorical rule advanced by the Government and endorsed by the dissent." *Id.*, at 539.

[2] I am sensitive to the Government's contention that allowing criminal defendants to obtain reductions of Type-C sentences under §3582(c)(2) might deprive the Government of the benefit of its bargain. Brief for United States 52.  But, as the majority persuasively explains, that argument "has nothing to do with whether a defendant's sentence was based on the Sentencing Guidelines under §3582(c)(2)" and therefore has no bearing on whether a defendant who has entered into a Type-C agreement is eligible for a sentence reduction.  *Ante*, at 12; see *Freeman*, 564 U. S., at 532 (plurality opinion) ("What is at stake . . . is a defendant's eligibility for relief, not the extent of that relief").  All that said, there may be circumstances in which the Government makes substantial concessions in entering into a Type-C agreement with a defendant—*e.g.,* by declining to pursue easily proved and weighty sentencing enhancements—such that there is a compelling case that the agreed-upon sentence in the Type-C agreement would not have been affected if the subsequently lowered Guidelines range had been in place at the relevant time.  If such circumstances exist, I expect that district courts will take that into account when deciding whether, and to what extent, a Type-C sentence should be reduced under §3582(c)(2). See *ante,* at 12–13.

# SUPREME COURT OF THE UNITED STATES

_____

No. 17–155

_____

## ERIK LINDSEY HUGHES, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE ELEVENTH CIRCUIT

[June 4, 2018]

CHIEF JUSTICE ROBERTS, with whom JUSTICE THOMAS
and JUSTICE ALITO join, dissenting.

Seven years ago, four Justices took the position that a
defendant sentenced to a term of imprisonment specified
in a binding plea agreement may have been sentenced
"based on" a Sentencing Guidelines range, simply because
the district court must consider the Guidelines in deciding
whether to accept the agreement. *Freeman* v. *United
States*, 564 U. S. 522, 529–530 (2011) (plurality opinion).
That view has since garnered more votes, but has not
gotten any more persuasive.

A defendant is eligible for a sentence reduction following
a retroactive Guidelines amendment if he was "sentenced
to a term of imprisonment based on a sentencing range
that has subsequently been lowered by the Sentencing
Commission." 18 U. S. C. §3582(c)(2). When a defendant
enters into a binding "Type-C" plea agreement pursuant to
Federal Rule of Criminal Procedure 11(c)(1)(C), however,
the resulting sentence is "dictated by the terms of the
agreement entered into by the parties, not the judge's
Guidelines calculation." *Freeman*, 564 U. S., at 536
(SOTOMAYOR, J., concurring in judgment). Five Justices
recognized as much in *Freeman.* See *ibid.*; *id.,* at 544
(ROBERTS, C. J., dissenting).

If a defendant pleads guilty pursuant to a Type-C

agreement specifying a particular term of imprisonment, the district court may sentence him only to that term. See Fed. Rule Crim. Proc. 11(c)(1)(C) (the parties' choice of an "appropriate" sentence "binds the court once the court accepts the plea agreement"). If the judge considers the parties' chosen sentence to be inappropriate, he does not have discretion to impose a different one. Instead, the court's only option is to reject the agreement and afford the defendant the opportunity to be released from his guilty plea. See Fed. Rules Crim. Proc. 11(c)(3)(A), (4), (5).

As the Court points out, a district court considering whether to accept a Type-C agreement must consult the Guidelines, as the District Court did here. *Ante,* at 5; see App. to Pet. for Cert. 32a–36a. But "when determining the sentence to impose," the district court may base its decision on "one thing and one thing only—the plea agreement." *Freeman*, 564 U. S., at 545 (ROBERTS, C. J., dissenting). The Court characterizes this distinction as "artificial," arguing that the district court's ultimate imposition of a sentence often has as much to do with its Guidelines calculation as anything else. *Ante,* at 13; see *ante,* at 10–11. But that is not so: With a Type-C agreement, the sentence is set by the parties, not by a judge applying the Guidelines. Far from being "artificial," that distinction is central to what makes a Type-C plea a Type-C plea. "In the (C) agreement context" it is "the binding plea agreement that is the foundation for the term of imprisonment." *Freeman*, 564 U. S., at 535 (opinion of SOTOMAYOR, J.). "To hold otherwise would be to contravene the very purpose of (C) agreements—to bind the district court and allow the Government and the defendant to determine what sentence he will receive." *Id.,* at 536.

That commonsense understanding accords with our reading of the phrase "based upon" in the context of deciding when a cause of action is based upon particular con-

duct. In *Saudi Arabia* v. *Nelson*, 507 U. S. 349 (1993), we considered a provision in the Foreign Sovereign Immunities Act of 1976 providing an exception to a foreign state's immunity when "the action is based upon a commercial activity carried on in the United States by the foreign state." 28 U. S. C. §1605(a)(2). We said that the phrase did not encompass a foreign state's activity that "led to" the tortious conduct. 507 U. S., at 358. Instead, we interpreted the phrase to refer only to the conduct that forms "the 'basis,'" or "foundation," of the cause of action—that is, "the 'gravamen of the complaint.'" *Id.,* at 357. And as we explained, the "torts, and not the arguably commercial activities that preceded their commission, form the basis for the [plaintiffs'] suit." *Id.,* at 358. So too here: The Type-C agreement, and not the Guidelines calculation that preceded its acceptance, forms the basis for the sentence.

More recently, in *OBB Personenverkehr AG* v. *Sachs*, 577 U. S. \_\_\_ (2015), we found that a cause of action was not "based upon" commercial activity when the activity established just one element of the action. The phrase "based upon," we explained, instead looks to "the core of [the] suit" and what the claims "turn on." *Id.,* at \_\_\_–\_\_\_ (slip op., at 7–8). Here the sentence that petitioner Hughes received "turned on" the agreement, not the Guidelines or anything else.

The Court finds new justification for its interpretation in *Peugh* v. *United States*, 569 U. S. 530 (2013), and *Molina-Martinez* v. *United States*, 578 U. S. \_\_\_ (2016). But those cases—which do not concern the language of §3582(c)(2) or sentencing pursuant to Type-C agreements—do not inform the distinct question at hand. I agree that when a district court has discretion to select an appropriate sentence, the resulting sentence can often be said to be based on the advisory Guidelines range. See *Peugh*, 569 U. S., at 541 (describing sentences under the post-*Booker* scheme as "anchored by the Guidelines," see *United States* v. *Booker*,

543 U. S. 220 (2005)); *Molina-Martinez*, 578 U. S., at ___ (slip op., at 15) ("[i]n the ordinary case" the Guidelines "anchor the court's discretion in selecting an appropriate sentence"). But there are circumstances where the district court's discretion is confined such that the Guidelines range does not play a meaningful part in the ultimate determination of the defendant's sentence. One such scenario is when an applicable mandatory minimum supersedes the Guidelines range. See *Koons* v. *United States*, ___ U. S. ___, ___ (2018) (slip op., at 2) (a Guidelines range can be "overridden" by "a congressionally mandated minimum sentence"). Another is the situation before us, where Rule 11(c)(1)(C) compels the district court to sentence the defendant to a term chosen by the parties, or none at all.

Finally, as five Members of this Court recognized in *Freeman*, "[a]llowing district courts later to reduce a term of imprisonment simply because the court itself considered the Guidelines in deciding whether to accept the agreement would transform §3582(c)(2) into a mechanism by which courts could rewrite the terms of (C) agreements in ways not contemplated by the parties." 564 U. S., at 536–537 (opinion of SOTOMAYOR, J.); see *id.,* at 545 (ROBERTS, C. J., dissenting). The Court dismisses this point as having "nothing to do with whether a defendant's sentence was based on the Sentencing Guidelines." *Ante,* at 12. But of course it does. The very purpose of a Type-C agreement is to present the defendant's sentence to the district court on a take-it-or-leave-it basis, preventing the district judge from altering the sentence as he sees fit. The Court's interpretation of §3582(c)(2) allows for just such revision, possibly many years down the line, when the Government has already fulfilled its side of the bargain.

The Court justifies this result by arguing that its rule ensures that "those who commit crimes of similar severity

under similar conditions receive similar sentences." *Ante,* at 11. But that ignores the crucial way in which Type-C defendants are *not* similarly situated to other defendants. They entered into binding agreements—based on the unique facts of their cases and their negotiations with prosecutors—and received benefits (often quite significant ones) that other defendants do not. The facts of this case provide a striking illustration. In exchange for the certainty of a binding 180-month sentence, the Government not only dropped additional charges against Hughes, but also promised not to pursue a recidivist enhancement that would have imprisoned him for life.

The Court stresses that the question presented concerns only a Type-C defendant's *eligibility* under §3582(c)(2), and that the district court might exercise its discretion to deny a reduction if it "concludes that it would have imposed the same sentence even if the defendant had been subject to the lower range." *Ante,* at 14; see *ante,* at 13 (suggesting that the district court "can consider the benefits the defendant gained by entering a Type-C agreement" in deciding "whether a reduction is appropriate"). But even if the district court ultimately decides against a reduction, the Government will be forced to litigate the issue in the meantime—nullifying another of its benefits from the Type-C agreement. To secure the sentence to which the parties already agreed, the Government likely will have to recreate the state of play from the original plea negotiations and sentencing to make counterfactual "what if" arguments—which, naturally, the defendant will then try to rebut. Settling this debate is unlikely to be as straightforward as the Court anticipates.

The point is a very practical one: Hughes pleaded guilty and entered into a binding agreement because he otherwise was looking at life in prison. Although the District Court dutifully performed the required Guidelines calculations, Hughes's sentence was based on the agreement, not

the Guidelines range.  Hughes should not receive a windfall benefit because that range has been changed.

The Government may well be able to limit the frustrating effects of today's decision in the long run.  Going forward, it presumably can add a provision to every Type-C agreement in which the defendant agrees to waive any right to seek a sentence reduction following future Guidelines amendments.  See Brief for Petitioner 34–35 (referring to the possibility of such an "explicit waiver").  But that is no comfort when it comes to cases like this one, where the parties understood their choice of sentence to be binding.

I respectfully dissent.