# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued October 11, 2017      Decided July 20, 2018

No. 16-3089

UNITED STATES OF AMERICA,
APPELLEE

v.

ROBERT SMITH,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:10-cr-00051)

*Tony Axam Jr.*, Assistant Federal Public Defender, argued the cause for appellant. With him on the briefs was *A.J. Kramer*, Federal Public Defender.

*Michael E. McGovern*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Channing D. Phillips*, U.S. Attorney, and *Elizabeth Trosman*, *Chrisellen R. Kolb*, *Anthony Scarpelli*, and *Barry Wiegand*, Assistant U.S. Attorneys.

Before: KAVANAUGH[*] and MILLETT, *Circuit Judges*, and

---

[*] Judge Kavanaugh was a member of the panel at the time the case was argued, but did not participate in this opinion.

WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* MILLETT.

MILLETT, *Circuit Judge*: Robert Smith pled guilty under Federal Rule of Criminal Procedure 11(c)(1)(C) to a criminal conspiracy and was sentenced to 156 months of imprisonment, a sentence that fell within the recommended Sentencing Guidelines range. Later, the United States Sentencing Commission lowered that range and made its amendment retroactive. Smith then moved for a corresponding reduction in his sentence. The district court ruled that a reduced sentence was both legally unavailable and unwarranted. Because, under circuit and recent Supreme Court precedent, Smith was eligible for a sentence reduction, we reverse and remand for the district court to more fully explain its decision to deny relief.

**I**

**A**

The United States Sentencing Guidelines establish a non-binding framework for determining criminal sentences in federal prosecutions. As relevant here, at the time of Smith's sentencing, Section 2D1.1(c) set the starting point of the sentencing calculation—the "base level"—at 32 for offenses like Smith's that involve at least one but less than three kilograms of PCP. Factoring in his criminal history and a downward departure for his guilty plea, Smith faced a recommended Guidelines range of 140 to 175 months of imprisonment. Following a plea agreement, the district court sentenced him to 156 months, the middle of the recommended Guidelines range and the sentence upon which the parties had agreed.

Three years later, the Sentencing Commission amended Section 2D1.1(c) by reducing that particular offense to a base

level of 30, which would carry a recommended sentencing range of 120 to 150 months of imprisonment. *See* U.S.S.G. § 2D1.1(c) and Supp. to App'x C, Amend. 782 ("Amendment 782") (Nov. 1, 2014). That Amendment applies retroactively to already-imposed sentences like Smith's. *Id.* at Supp. to App'x C, Amend. 788, at pp. 86–87; *see Hughes v. United States*, 138 S. Ct. 1765, 1774 (2018).

Under federal law, if a defendant's term of imprisonment was "based on a sentencing range that has subsequently been lowered by the Sentencing Commission," the sentencing court "may reduce the term of imprisonment[.]" 18 U.S.C. § 3582(c)(2). The decision whether to do so must be based on the sentencing factors set forth in 18 U.S.C. § 3553(a), and any reduction must be "consistent with applicable policy statements issued by the Sentencing Commission," 18 U.S.C. § 3582(c)(2).

Section 3553(a), in turn, requires courts to consider a variety of factors in imposing a sentence or in resentencing, including:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed–
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other

> correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for–
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[; and]
>>
>>        * * *
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

18 U.S.C. § 3553(a).

## B

A grand jury indicted Robert Smith and twelve co-defendants on several drug charges, including conspiracy to distribute PCP, heroin, cocaine, and crack cocaine, and unlawful possession with intent to distribute PCP, all in violation of 21 U.S.C. § 841(a)(1) and (b)(1). A later indictment also charged him with violating the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d), for participating in a criminal enterprise to distribute narcotics, known as the "Pray Drug Organization." That RICO count attributed a sweeping breadth of criminal activity to some of the defendants, such as murder, robbery, and the distribution and unlawful possession of various drugs. But Smith was charged only with conspiring to possess with intent to distribute PCP as part of the Pray Drug Organization.

At a plea hearing, Smith pled guilty to the single RICO charge. He entered that plea pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), a particular form of plea

agreement under which the government and Smith both agreed to a recommended sentence of 156 months of imprisonment. Under the plea agreement, Smith stipulated that he had possessed with intent to distribute at least one kilogram of PCP.

At his sentencing hearing, Smith generally confirmed his agreement to the plea. Sentencing Hr'g Tr. 14–15, *United States v. Smith*, No. 10-cr-51-09 (D.D.C. Aug. 9, 2011). Before agreeing to the proposed sentence, however, Smith expressed concern that the agreement did not guarantee his admission into a drug rehabilitation program, which would reduce his sentence if completed successfully. *Id.* at 7–14. Smith was worried that, given the RICO charge against him and his criminal history, he would be deemed a violent offender and, on that basis, denied admission into the program. *Id.* at 12.

The district court explained that it was impossible to guarantee admission into the program because that decision is made by the Bureau of Prisons, Sentencing Hr'g Tr. 11, and that "the real problem is not only this RICO charge, although this doesn't necessarily have violence in it," but Smith's "prior offenses with weapons charges," *id.* at 12. Smith's lawyer then stated that the Bureau would see that this conviction and "his specific proffer of evidence," unlike that of his co-defendants, "does not include any reference to Mr. Smith carrying out any act of violence, doing anything at all that involves violence in this case." *Id*. at 13.

Apparently assured by that exchange that he would remain eligible for the rehabilitation program, Smith agreed to go forward with sentencing. Sentencing Hr'g Tr. 14–15. The district court then sentenced Smith to the agreed-upon 156 months of imprisonment, to be followed by five years of supervised release. The district court also specifically recommended to the Bureau of Prisons that Smith be admitted into the drug rehabilitation program.

In January 2016, Smith filed a *pro se* letter requesting a sentence reduction based on the intervening Sentencing Guideline Amendment 782.  He claimed that, under the amendment to his base offense level, the recommended range for his crime decreased to 120 to 150 months, and so a proportionate reduction in his sentence would lower it to 134 months.  The government opposed Smith's motion on the ground that his sentence was based on the agreed-upon plea terms, and not the Sentencing Guidelines, and that, in any event, Smith did not merit such an exercise of discretion.

The district court denied Smith's motion for a reduced sentence.  The court first ruled that Smith was disqualified from receiving a sentence reduction as a matter of law because his sentence turned on the terms of the plea agreement; "the guideline range was not part of the Court's calculus in determining the sentence[.]"  Secondly, the court ruled that, even if Smith were eligible, the court would in its discretion deny a reduction because Smith conspired with a gang responsible for murdering a witness while he himself was on supervised release for unrelated drug and gun charges.  The court added that, in its view, Smith posed a danger to the community.

## II

Because the question of whether a defendant is eligible for a sentence reduction is a question of law, we review it *de novo*. *United States v. Epps*, 707 F.3d 337, 351 (D.C. Cir. 2013).  We review the district court's discretionary decision to deny a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2) under an abuse of discretion standard.  *United States v. Lafayette*, 585 F.3d 435, 439 (D.C. Cir. 2009) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)).

**A**

On the question of Smith's legal eligibility for sentencing relief under 18 U.S.C. § 3582(c)(2), both prior circuit precedent and a recent Supreme Court decision answer that question in Smith's favor. In *Hughes v. United States*, 138 S. Ct. 1765 (2018), the Supreme Court held that a defendant who was sentenced under a plea agreement authorized by Federal Rule of Criminal Procedure 11(c)(1)(C) may seek a sentence correction if his sentence was "based on" a Sentencing Guidelines range that was subsequently reduced by the Sentencing Commission. A sentence will be "based on" a Guidelines range, for this purpose, "if the range was a basis for the court's exercise of discretion in imposing a sentence," in that it was a foundation or starting point for the district court's sentencing calculation. *Hughes*, 138 S. Ct. at 1775; *see also United States v. Epps*, 707 F.3d at 351-352.

The Supreme Court acknowledged that, under its test, "there will be no question that the defendant's Guidelines range was a basis for his sentence" in "the typical sentencing case." *Hughes*, 138 S. Ct. at 1775. After all, "the Guidelines are 'the starting point for every sentencing calculation in the federal system.'" *Id*. (quoting *Peugh v. United States*, 569 U.S. 530, 542 (2013)). And even if a district court varies from the Guidelines range, the sentence will still be based on the Guidelines if "the judge uses the sentencing range as the beginning point to explain the decision to deviate" from it. *Id.* A defendant will only be disqualified as a matter of law from seeking sentencing relief if the later-amended Guidelines range "play[ed] no relevant part in the judge's determination of the defendant's ultimate sentence." *Koons v. United States*¸ 138 S. Ct. 1783, 1788 (2018) (defendant was sentenced based on mandatory minimum statutes and credit for substantial assistance to the government).

A district court's agreement with a stipulated sentence proposed in a Rule 11(c)(1)(C) plea agreement, the Supreme Court emphasized, "is no exception to the general rule that a defendant's Guidelines range is both the starting point and a basis for his ultimate sentence." *Hughes*, 138 S. Ct. at 1776. That is because, whatever the legal source of the plea authority, the district court's "first" obligation in imposing a sentence remains "evaluating the recommended sentence in light of the defendant's Guidelines range." *Id.*

In short, a defendant's eligibility for sentencing relief following a Guidelines amendment depends entirely on whether the later-amended Guidelines range was "a relevant part of the analytic framework the judge used to determine the sentence or to approve the agreement." *Hughes*, 138 S. Ct. at 1776 (quotation omitted). It does not "turn on the form of his plea agreement." *Id.*

Under *Hughes* and *Epps*, the district court unquestionably erred in holding that Smith was legally ineligible to seek sentencing relief. Smith's case squarely fits the mold of "the usual case" in which the district court's acceptance of a Rule 11(c)(1)(C) "agreement and the sentence to be imposed pursuant to that agreement are 'based on' the defendant's Guidelines range." *Hughes*, 138 S. Ct. at 1770. The sentencing transcript demonstrates that the later-amended Guidelines range was the "starting point" for the district court's sentencing calculation. *Id.* The district court began the sentencing hearing by noting that the stipulated 156-month sentence would be "right smack about in the middle of" the Guidelines' recommended range of 140 to 175 months. Sentencing Hr'g Tr. 4. Next, the district court explained that "[t]he first thing we do is look at the sentencing guidelines to evaluate the seriousness of the offense and the criminal history record of the defendant and those two things are put on a matrix to come up with a number for the total sentence." *Id.* at 15. The court then continued, "we start with the idea that [the] 11(c)(1)(C) plea is

authorized by the sentencing guidelines." *Id.* at 16. The range the district court considered, moreover, was specifically based upon the now-amended U.S.S.G. § 2D1.1(c). *See* App. 129 (explaining that the "U.S. Probation Office calculated Mr. Smith's relevant conduct of at least one kilogram of PCP result[ing] in a base offense level of 32 under U.S.S.G. § 2D1"); *see also Hughes*, 138 S. Ct. at 1773 (explaining that, even under a Rule 11(c)(1)(C) plea, the district court must consider the applicable Guidelines range, and generally does so after "review[ing] the presentence report").

The plea agreement itself confirms the role that the now-amended Guideline played in determining Smith's sentence. In the plea, the government agreed "that it will not seek an upward departure from the otherwise applicable guideline range established by the Sentencing Guidelines." App. 83; *see also* App. 129 (referencing the U.S. Probation Office's Presentence Report that calculated the applicable range under Section 2D1.1). Smith, for his part, agreed not to "seek a downward departure for any reason from the otherwise applicable guideline range established by the Sentencing Guidelines." App. 86; *see also Hughes*, 138 S. Ct. at 1774 (plea agreement was "based on" the applicable Guideline even though the agreement never specified which one).

All of those factors together demonstrate that the now-amended Sentencing Guidelines provision, U.S.S.G. § 2D1.1(c), and the range it calculated for Smith's offense were "a relevant part" of the district court's "analytic framework." *Hughes*, 138 S. Ct. at 1776 (quoting *Freeman v. United States*, 564 U.S. 522, 530 (2011) (plurality opinion)); *see Koons*, 138 S. Ct. at 1788. Nothing more needed to be shown to render Smith eligible for resentencing in the wake of the retroactive amendment to his base-offense level.

The government argues that the district court imposed the agreed-upon sentence because it was a "wired" plea—part of a

"broader settlement framework" that included three other co-defendants. That may well have been a factor in the court's decision. But *Hughes* held that the later-amended Guidelines provision need only be "*a*" relevant part of the sentencing calculus. *Hughes*, 138 S. Ct. 1776 (emphasis added and internal quotation marks omitted); *see also Epps*, 707 F.3d at 346 n.5. And *Hughes* was explicit that eligibility for relief does *not* "turn on the form of [a defendant's] plea agreement." *Id.*

The government also trots out on appeal a whole new theory for rendering Smith ineligible for a sentence reduction: his calculated Guidelines range was erroneous, and Smith should have been subjected to a Guidelines enhancement as a career offender. The career-offender provision, the government notes, was not amended and thus would not itself provide a basis for Smith to seek a sentence reduction.

That dog will not hunt. The government admits that it never raised this issue below. So the argument is forfeited. *See American Wildlands v. Kempthorne*, 530 F.3d 991, 1001 (D.C. Cir. 2008). Doubly so because the government never challenged the applicable Guidelines range at the time of the original sentencing, even though it was fully aware of the career-offender provision's potential availability. *See* App. 100 (government sentencing memorandum notes that the Probation Office did not calculate Smith's sentence with regard to the "application of the Career Offender guideline," but still "the government maintains the stipulated sentence in Smith's case is appropriate for [] other reasons * * * .").

Anyhow, Section 3582(c)(2)'s operation is more modest than the government envisions. It only permits a court to "'reduce' an otherwise final sentence in circumstances specified by the Commission." *Dillon v. United States*, 560 U.S. 817, 825 (2010). It does not trigger a "plenary resentencing proceeding." *Id.* at 826; *see Chavez-Meza v. United States*, 138 S. Ct. 1959, 1967 (2018).

In sum, the sentencing record documents that the later-amended base offense level provision was the starting point and a relevant factor in the sentence the district court imposed. Under *Hughes*, that is enough to open the resentencing door to Smith.

### III

Being legally eligible to seek sentencing relief is one thing. Persuading a district court to exercise its discretion to grant such relief is another. In deciding whether to grant a sentence reduction for which a defendant is legally eligible, a sentencing court must consider the factors laid out in 18 U.S.C. § 3553(a) to the extent applicable. *Dillon*, 560 U.S. at 824–825 (citing 18 U.S.C. § 3582(c)(2)). And in evaluating those Section 3553(a) factors, the court "must make an individualized assessment based on the facts presented." *Gall*, 552 U.S at 50. In so doing, the district court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Id.* (citations omitted).[1]

Here, the only explanation provided by the district court for denying Smith any sentence reduction at all was that:

> While he was on supervised release from prior convictions on a drug and gun charges, Mr. Smith conspired with a gang responsible for murdering a witness. He conceded in this guilty plea that his own relevant conduct involved

---

[1] Because the government does not argue that, as a matter of law, a district court may offer less of an explanation at *re*sentencings than the original imposition of sentence, we assume for purposes of this decision that the duties are equivalent. *See Chavez-Meza*, 138 S. Ct. at 1965.

> distribution of at least one kilogram of PCP. Mr. Smith poses a danger to the community and a sentence reduction would not be warranted or appropriate.

*United States v. Smith*, No. 10-cr-51-09 (D.D.C. July 26, 2016), ECF No. 560 at 6.

That cursory explanation falls short of the task. Federal law demands that the sentencing decision be individualized and reflect material differences in defendants' crimes of conviction and personal characteristics. *See Gall*, 552 U.S at 50. By all indications, that particularized consideration did not happen here. Quite the opposite. The district court's decision simply reduplicated the explanation the court had already given in denying sentence reductions to Smith's co-defendants who were convicted of much more serious and violent crimes, including acquiring weapons and covering up a murder. App. 50–51.

For example, in denying a sentence modification for co-defendant Charles Wade, who was convicted of conspiring to acquire firearms for the Pray Drug Organization, the district court said:

> Mr. Wade conspired with a gang responsible for murdering a witness, and he conceded that his own relevant conduct involved distribution of at least one kilogram of PCP. Mr. Wade poses a danger to the community and a sentence reduction would not be appropriate.

*United States v. Charles Wade*, Crim. No. 10-51-10 (D.D.C. July 18, 2016), ECF No. 559 at 5-6.

Likewise, for co-defendant Herman Williams, who was involved in covering up the murder of a witness, the district

court said:

> Mr. Williams conspired with a gang responsible
> for murdering a witness, and he conceded that
> his own relevant conduct involved distribution
> of at least one kilogram of PCP. Mr. Williams
> poses a danger to the community and a sentence
> reduction is not appropriate.

*United States v. Herman Williams*, Crim. No. 10-51-12
(D.D.C. July 13, 2016), ECF No. 557 at 5.

The district court's reliance on what seems like cut-and-paste reasoning to dispose of Smith's motion, without any consideration of his substantially different conviction circumstances, flouts the law's promise of an "individualized assessment." *See Nelson v. United States*, 555 U.S 350, 351 (2009) (per curiam) (holding that a court must "consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors").

At no point did the district court's carbon-copy analysis acknowledge, let alone factor in, the same court's recognition at the initial sentencing that Smith—unlike Wade or Williams—had *not* engaged in violent conduct. Plea Hr'g Tr. 13 ("You are not charged with any of the violent activities, right?"). Before going forward with the plea, Smith was adamant about preserving his eligibility for a Bureau of Prison rehabilitation program that is not available to individuals convicted of violent crimes. Understanding that, the district court found on the record that the evidence did not indicate "Mr. Smith carr[ied] out any act of violence," Sentencing Hr'g Tr. 13, and specifically recommended that Smith be considered for the program.

Against that distinct backdrop, the district court's declaration at resentencing that Smith was a danger to the

community came as a sudden and unexplained reversal of course on a matter that had been of central importance at the original sentencing proceeding. The district court made no fact findings and offered no rationale for its about-face. *Cf. United States v. Kpodi*, 824 F.3d 122, 127–128 (D.C. Cir. 2016) (finding an abuse of discretion where district court relied on factual findings at sentencing that contradicted pre-trial findings and were clearly erroneous).

To be sure, the district court pointed to the gang's responsibility for a murder. But that was not new—the district court was aware of that at the original sentencing. It did not affect the court's original judgment about the non-violent character of Smith's offense because the record was undisputed that Smith had nothing at all to do with that aspect of the gang's activities. As the district court had explained previously, the RICO charge to which Smith pled guilty "doesn't necessarily have violence in it." *United States v. Robert Smith*, Crim. No. 10-51-9 (D.D.C. Aug. 9, 2011), ECF No. 567 at 12. The court also accepted that Smith had little to no knowledge of the murders committed by other members of the Pray Drug Organization. Plea Hr'g Tr. 16. (defense counsel explained that Smith "doesn't know about" all of the "murder information," to which the district court affirmed "Right"). As far as the court's resentencing decision reveals, nothing had changed. Yet the court painted Smith with the same danger-to-the-community brush as Wade and Williams, who respectively had actual involvement with firearms and the murder.

Under Section 3553(a)'s individualized-decisionmaking rubric, reversals of course or seemingly contradictory findings should not go unexplained. *See*, *e.g.*, *United States v. Woods*, 581 F.3d 531, 538 (7th Cir. 2009), *overruled on other grounds by United States v. Taylor*, 778 F.3d 667 (7th Cir. 2015) (concluding that "district courts in § 3582(c)(2) proceedings cannot make findings inconsistent with that of the original

sentencing court"); *United States v. Adams*, 104 F.3d 1028, 1030 (8th Cir. 1997) (holding that findings at sentencing "that adequately reflect[ed] the seriousness of the actual offense behavior" may not be reversed in a later § 3582(c)(2) proceeding); *cf. Kpodi*, 824 F.3d at 127-128; *see also* 18 U.S.C. § 3553(a)(2)(D) (requiring a court to consider the defendant's need for "medical care, or other correctional treatment" in resentencing, which it did here at during his initial sentencing hearing concluding that Smith would benefit from admittance to the drug rehabilitation program).

Given the unique circumstances of this case—the carbon-copy reasoning, and the sharp yet unexplained change in course in characterizing Smith's offense as violent—there was "much else for the judge to say" and "a more detailed explanation w[as] necessary." *Chavez-Meza*, 138 S. Ct. at 1967.

* * * * *

The district court erred in holding that Smith was categorically ineligible for resentencing. The court's alternative holding that a resentencing was not warranted contradicted its original finding that Smith's crime was non-violent, and lacked the personalized analysis required to permit meaningful appellate review. For those reasons, we reverse and remand so that the district court can undertake an individually tailored determination of whether resentencing is warranted in this case.

*So ordered.*