# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued April 8, 2021            Decided May 18, 2021

No. 20-3064

UNITED STATES OF AMERICA,
APPELLEE

v.

DAVID M. LONG, ALSO KNOWN AS DAMO,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:10-cr-00171-1)

———

*Andrew B. Talai*, appointed by the court, argued the cause for appellant. With him on the appellant's Memorandum of Law and Fact was *Jeffrey T. Green*, appointed by the court.

*Mark Hobel*, Assistant U.S. Attorney, argued the cause for appellee. With him on the appellee's Memorandum of Law and Fact were *Elizabeth Trosman* and *John P. Mannarino*, Assistant U.S. Attorneys.

Before: MILLETT and PILLARD, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

2

Opinion for the Court filed by *Circuit Judge* MILLETT.

MILLETT, *Circuit Judge*: Defendant David Long is currently incarcerated at a federal medical penitentiary. He is serving a 29-year sentence for violent racketeering offenses committed over the course of three decades. He is a double amputee and suffers from a variety of other disabling medical conditions.

As the COVID-19 pandemic raged through the federal prison system, Long filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). He argued that his distinct medical susceptibility to COVID-19 and the failure of prison officials to curb the disease's rapid spread constituted "extraordinary and compelling" reasons for release under that statute.

The district court denied his motion because it believed itself bound by a policy statement issued by the United States Sentencing Commission that bars courts from releasing any incarcerated defendant unless the court first finds that he "is not a danger to the safety of any other person or to the community[.]" *See* U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 1B1.13(2) (U.S. SENTENCING COMM'N 2018) We, like seven other circuits, hold that this policy statement is not applicable to compassionate release motions filed by defendants, and so we vacate the district court's order and remand the case for further proceedings.

**I**

**A**

As a general rule, a federal court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C.

§ 3582(c). But this rule of finality is subject to a few narrow exceptions. *Freeman v. United States*, 564 U.S. 522, 526 (2011). One of those exceptions is for compassionate release.

In 1984, Congress authorized the Director of the Bureau of Prisons to ask courts to reduce defendants' sentences in unusual circumstances. Comprehensive Crime Control Act of 1984, Pub. L. No. 98-473, sec. 212, § 3582(c), 98 Stat. 1837, 1998–1999. The statute provided that a court could, "upon motion of the Director of the Bureau of Prisons," reduce a defendant's term of imprisonment when (1) "extraordinary and compelling reasons warrant such a reduction," (2) the "reduction is consistent with applicable policy statements issued by the Sentencing Commission[,]" and (3) the reduction is appropriate "considering the factors set forth in [S]ection 3553(a) to the extent that they are applicable[.]" *Id.* (codified at 18 U.S.C. § 3582(c)(1)(A)).

For more than three decades, the statute left the Director of the Bureau of Prisons in "absolute control over this mechanism for lenity[.]" *United States v. Brooker*, 976 F.3d 228, 231 (2d Cir. 2020). The Bureau "used that power so 'sparingly'" that, as of 2013, on average only 24 defendants were being released annually. *United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020) (first citing *Brooker*, 976 F.3d at 231; and then citing Department of Justice, Office of the Inspector General, *The Federal Bureau of Prisons' Compassionate Release Program* 1 (2013), https://www .oversight.gov/sites/default/files/oig-reports/e1306.pdf).

Displeased with that desuetude, Congress put this problem in its crosshairs in 2018 when it enacted criminal justice reform measures in the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018). *See* Shon Hopwood, *Second Looks & Second Chances*, 41 CARDOZO L. REV. 83, 105–106 (2019). In a

Section of the Act entitled "Increasing the Use and Transparency of Compassionate Release," First Step Act § 603(b), 132 Stat. at 5239, Congress made an important change to 18 U.S.C. § 3582(c)(1). The Act removed the Bureau of Prisons as the gatekeeper of compassionate release and "provid[ed] that defendants now may file motions for sentence modifications on their own behalf," as long as they first exhaust their remedy of applying to the Bureau of Prisons. *McCoy*, 981 F.3d at 276. Any such motion for compassionate release is generally filed with the judge that imposed the original sentence. *See United States v. Keefer*, 832 F. App'x 359, 363 (6th Cir. 2020) (considering compassionate release motion and noting the "common scenario" in which "the district judge who sentenced the defendant is the same judge who considers the defendant's reduction-of-sentence motion").

As a result, the compassionate release statute now provides in relevant part (with the new First Step Act language italicized):

> [T]he court, upon motion of the Director of the Bureau of Prisons, *or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier*, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [S]ection 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction; * * *

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A) (emphasis added).

The Sentencing Commission has lacked a quorum since early 2019, and so it has been unable to update its preexisting policy statement concerning compassionate release to reflect the First Step Act's changes. *See Brooker*, 976 F.3d at 234; *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020); *see also* 28 U.S.C. § 992(b)(2)(B) (voting member of Commission whose term has expired may continue to serve until "the date on which the Congress adjourns sine die to end the session of Congress that commences after the date on which the member's term expired"); U.S. Senate, *Dates of Sessions of the Congress*, https://www.senate.gov/legislative/Datesof SessionsofCongress.htm (last accessed May 3, 2021) (115th Congress adjourned Jan. 3, 2019). As a result, the text of the Sentencing Commission's policy statement still limits compassionate release to "motion[s] of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A)[.]" U.S.S.G. § 1B1.13. The Commission's commentary is to the same effect: "A reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons pursuant to 18 U.S.C. § 3582(c)(1)(A)." U.S.S.G. § 1B1.13, Application Note 4.

In substantive terms, the policy statement governing the Bureau of Prisons' motions provides that a district court may grant a motion for compassionate release, after considering the applicable factors listed at 18 U.S.C. § 3553(a), only when it finds both that "extraordinary and compelling reasons warrant

6

the reduction," and that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" U.S.S.G. § 1B1.13(1)(A), (2).

**B**

David Long led a narcotics distribution enterprise in the District of Columbia from the late 1980s through at least November 2008. In May 2012, he pleaded guilty to one count of RICO conspiracy in violation of 18 U.S.C. § 1962(d). In connection with the plea, Long admitted to running a narcotics enterprise in which he distributed large volumes of heroin to street-level dealers for sale to consumers.

Long also admitted to several violent crimes as part of his drug operations. In the summer of 1990, Long kidnapped a young man named Anthony Morrisey and attempted to extract a ransom from Morrisey's family and friends. When Long suspected that the police had been tipped off, he murdered Morrisey.

In 2002, Long himself was targeted for murder. He sustained significant injuries, leading to the amputation of both legs. Long believed that Franklin Moyler was responsible, as Moyler had demanded money from Long not long before the attempt on his life.

In 2007, Long paid his co-defendant Rico Thomas $10,000 to kill Moyler. In the same year, Long also contracted to have two more people murdered, Melvin Terrell and Oakley Majors. While the hit on Moyler resulted in his death, the other two targets survived. Terrell was paralyzed and lost his ability to speak. He has since had an arm amputated, undergone a lobotomy, and gone blind in one eye.

The Guidelines range for Long's RICO conspiracy conviction would have been life imprisonment, but the government and Long agreed to a plea under Federal Rule of Criminal Procedure 11(c)(1)(C) under which Long would be sentenced to 29 years in prison. The district court accepted that agreement and imposed the 29-year sentence.

## C

Long is incarcerated at the federal medical penitentiary in Springfield, Missouri. At this point, he has served almost 13 years of his 29-year sentence. His Bureau of Prison records indicate no disciplinary issues, and he has completed approximately twenty educational courses during his incarceration.

On September 4, 2020, Long moved the district court for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Long argued that his distinct medical susceptibility to COVID-19 qualified as an extraordinary and compelling reason for the reduction of his sentence.

The district court denied Long's motion. The court assumed that Long's health conditions provided an "extraordinary and compelling reason" for a sentence reduction, but it nevertheless denied relief because it could not "conclude that Long no longer poses a danger to the community" as required by the existing Sentencing Guidelines policy statement on compassionate release. App. 103; *see also* U.S.S.G. § 1B1.13.

Long filed a timely notice of appeal. He argues that the district court erred in relying on U.S.S.G. § 1B1.13(2) to deny compassionate release because that Guideline is not an "applicable policy statement[] issued by the Sentencing Commission" for defendant-filed motions under the First Step

Act.  *See* 18 U.S.C. § 3582(c)(1)(A).  Alternatively, he argues that the district court abused its discretion in finding that he remains a danger to the community.

## II

The district court had jurisdiction under 18 U.S.C. §§ 3231 and 3582(c)(1)(A).  The source of our appellate jurisdiction is an open question in this circuit, and neither party has offered a basis for it.  Yet it is our duty to assure ourselves of jurisdiction in every case.  *See Kaplan v. Central Bank of the Islamic Republic of Iran*, 896 F.3d 501, 509 (D.C. Cir. 2018).

Other courts that have heard appeals from denials of compassionate release have not yet engaged with the jurisdictional question at any length, although many have cited 28 U.S.C. § 1291.  *See*, *e.g.*, *United States v. Handerhan*, 789 F. App'x 924, 926 n.2 (3d Cir. 2019); *United States v. Gipson*, 829 F. App'x 780, 780 (9th Cir. 2020); *United States v. Rodriguez*, 837 F. App'x 652, 653 (10th Cir. 2021).  Others have not addressed jurisdiction at all.  *See, e.g.*, *Brooker*, 976 F.3d at 234; *Gunn*, 980 F.3d at 1180.

In 28 U.S.C. § 1291, Congress provided the federal courts of appeals with "jurisdiction of appeals from all final decisions of the district courts of the United States[.]"  Decisions denying sentence reductions "are unquestionably 'final decisions of [a] district court' because they close the criminal cases once again."  *United States v. Jones*, 846 F.3d 366, 369 (D.C. Cir. 2017) (Williams, J.) (quoting 28 U.S.C. § 1291) (formatting modified).  So Section 1291 "obviously looks promising" as a basis for jurisdiction.  *Id.*

But there is a wrinkle.  Another jurisdictional provision, 18 U.S.C. § 3742, allows a defendant to seek "review of an otherwise final sentence" only in four specified circumstances:

If the sentence (1) is "imposed in violation of law"; (2) is "imposed as a result of an incorrect application of the sentencing guidelines"; (3) exceeds the maximum fine or term of imprisonment, probation, or supervised release under the applicable Guideline range; or (4) is imposed "for an offense for which there is no sentencing guideline and is plainly unreasonable." 18 U.S.C. § 3742(a).

A "would-be appellant cannot use" Section 1291's "broad grant of jurisdiction to circumvent statutory restrictions on sentencing appeals in [Section] 3742." *Jones*, 846 F.3d at 369. So if the appeal of a denial of a sentence reduction under Section 3582(c)(1)(A)'s compassionate release provision constitutes a request for review of an "otherwise final sentence" and does not fall within one of the enumerated circumstances, Section 3742 would prohibit appellate jurisdiction.

In *Jones*, though, we expressed "serious doubt" about whether Section 3742 applies at all in the analogous context of appeals from the denial of a motion to reduce a sentence under the compassionate release provision's immediate neighbor, 18 U.S.C. § 3582(c)(2). 846 F.3d at 370. That provision authorizes sentencing courts to reduce an existing term of imprisonment when the Sentencing Guidelines range on which that sentence rested is later lowered by the Sentencing Commission.[1]

---

[1] The structure of Section 3582(c)(2) closely parallels that of the compassionate release provision, Section 3582(c)(1)(A). The former provides: "The court may not modify a term of imprisonment once it has been imposed except that * * * in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing

10

*Jones* centered its analysis on *Dillon v. United States*, 560 U.S. 817 (2010).  There, the Supreme Court ruled that, "[b]y its terms, § 3582(c)(2) does not authorize a sentencing or resentencing proceeding[,]" but instead "provides for the 'modif[ication of] a term of imprisonment' by giving courts the power to 'reduce' an otherwise final sentence in circumstances specified by the [Sentencing] Commission."  *Id.* at 825 (first alteration in original).  By distinguishing between proceedings for the initial imposition of sentence and sentence-modification proceedings, the Court concluded that a sentence-reduction proceeding under Section 3582(c)(2) "does not impose a new sentence in the usual sense."  *Id.* at 827.

The Supreme Court explained that Congress and the federal rules have repeatedly addressed the modification of already-imposed sentences separately and "apart from other sentencing proceedings."  *Dillon*, 560 U.S. at 828.  For example, the jurisdictional provision, Section 3742, itself contemplates only procedures "impos[ing]" sentences initially or through resentencing.  18 U.S.C. § 3742(a)(1), (2) & (4); *see also id.* § 3742(f) (authorizing remand to district court for "further sentencing" if court of appeals finds error); *id.* § 3742(g) (describing procedures for district court to "resentence" defendant upon remand); *Dillon*, 560 U.S. at 825 (citing Section 3742 to show that sentencing and resentencing proceedings are distinct from sentence-modification proceedings).  Section 3742 says nothing about the "sentence

---

Commission pursuant to 28 U.S.C. [§] 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(2).

modification" procedures set out in Section 3582(c)(2) or in any other type of post-imposition adjustment in sentences.

Similarly, Federal Rule of Criminal Procedure 43 requires that a defendant "must be present at * * * sentencing." FED. R. CRIM. P. 43(a)(3); *see also United States v. Garcia-Robles*, 640 F.3d 159, 164 (6th Cir. 2011) ("Every circuit court to address the issue has held that when resentencing is directed pursuant to a general remand order, a defendant is entitled to be present[.]"). But the same rule specifies that defendants "need not be present" for a "proceeding involv[ing] the correction or reduction of sentence under Rule 35 or 18 U.S.C. § 3582(c)." FED. R. CRIM. P. 43(b).

*Dillon*'s doctrinal distinction between the imposition of a sentence under Section 3742 and sentence-modification proceedings also makes practical sense. That is because, "[b]y definition, a sentence must already have been imposed" before a sentence-modification rule may be invoked "and a sentence reduction contemplated." *United States v. McAndrews*, 12 F.3d 273, 277 (1st Cir. 1993). This point is evident even in Section 3582(c)'s title, which calls for the "Modification of an Imposed Term of Imprisonment." 18 U.S.C. § 3582(c); *see also* Comprehensive Crime Control Act of 1984, Pub. L. No. 98-473, sec. 212, § 3582(c), 98 Stat. at 1998.

For the same reasons that a sentence modification under Section 3582(c)(2) does not fall within Section 3742's jurisdictional bar, neither does a compassionate release application for modification of a sentence under Section 3582(c)(1)(A). The same textual and logical reasons explicated in *Dillon* and *Jones* apply with equal force to (c)(1)(A) as they do to (c)(2). All a decision on the application for compassionate release does is operate upon and modify—or leave unchanged—an already-existing and already-imposed

sentence. *Cf. McAndrews*, 12 F.3d at 277. And an order *denying* a requested sentence modification leaves the preexisting sentence untouched, and so cannot sensibly be said to impose a final sentence. We therefore hold that Section 3742 is no obstacle to our exercise of jurisdiction under 28 U.S.C. § 1291 over this appeal of a denial of compassionate release.

That said, even if an appeal from the denial of a compassionate release motion were to constitute the imposition of a final sentence within the meaning of Section 3742, Long's appeal would fall within one of the allowable bases for appeal. Section 3742(a)(2) authorizes defendants to seek appellate review of "an otherwise final sentence if the sentence * * * was imposed as a result of an incorrect application of the sentencing guidelines[.]" 18 U.S.C. § 3742(a)(2). That is precisely what Long argues here. *See* Long Mem. 14.

In short, the district court's disposition of Long's motion for compassionate release was either a sentence-modification ruling appealable under 28 U.S.C. § 1291, consistent with our decision in *Jones*, or the imposition of a final sentence resulting from a misapplication of the Sentencing Guidelines, providing jurisdiction under 18 U.S.C. § 3742(a)(2).

**III**

**A**

While we have not previously established the standard of review for decisions on compassionate release motions under 18 U.S.C. § 3582(c)(1), we have reviewed motions for sentence reductions under Section 3582(c)(2) for an abuse of discretion. *United States v. Smith*, 896 F.3d 466, 470 (D.C. Cir. 2018); *United States v. Wyche*, 741 F.3d 1284, 1291–1292 (D.C. Cir. 2014); *see also United States v. White*, 984 F.3d 76, 85 (D.C. Cir. 2020). Because of their similar character, abuse

of discretion is also the appropriate standard of review in compassionate release appeals, as numerous other circuits have recognized. *See United States v. Pawlowski*, 967 F.3d 327, 330 (3d Cir. 2020); *United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021); *United States v. Kimball*, 988 F.3d 945, 947 (6th Cir. 2021); *United States v. Saunders*, 986 F.3d 1076, 1078 (7th Cir. 2021). That standard "comports with the language of the statute," which provides that the district court "*may* [not shall] reduce the term of imprisonment." *Pawlowski*, 967 F.3d at 330 (alteration in original) (quoting *United States v. Mateo*, 560 F.3d 152, 154 n.2 (3d Cir. 2009)). It also reflects the important discretion afforded the district court in the weighing of relevant factors and its expertise in evaluating the appropriateness of a sentence reduction given its role in originally sentencing the individual.

But because Long seeks reversal on the basis of an argument—the inapplicability of the existing Sentencing Commission policy statement to his compassionate release application—that he did not raise before the district court, we must review the denial of his motion only for plain error. *See* FED. R. CRIM. P. 52(b); *Puckett v. United States*, 556 U.S. 129, 135 (2009). Under plain error review, we may reverse only if (1) the district court committed error; (2) the error is "plain"; (3) the error affects the defendant's "substantial rights"; and (4) the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Taylor*, 497 F.3d 673, 676 (D.C. Cir. 2007) (formatting modified) (quoting *Johnson v. United States*, 520 U.S. 461, 466–467 (1997)); *see United States v. Olano*, 507 U.S. 725, 732 (1993).

Long argues that we should review the applicability of U.S.S.G. § 1B1.13 *de novo* as a question of statutory construction. That we cannot do. The Federal Rules of Criminal Procedure "compel[]" the application of plain error

review to unpreserved arguments in criminal appeals. *Puckett*, 556 U.S. at 143. As a result, we lack the discretion we possess in civil cases "to determine what questions to consider and resolve for the first time on appeal" through *de novo* review. *See Roosevelt v. E.I. Du Pont de Nemours & Co.*, 958 F.2d 416, 419 n.5 (D.C. Cir. 1992); *see also Al Bahlul v. United States*, 767 F.3d 1, 10–11 & n.7 (D.C. Cir. 2014) (en banc) (applying plain error to statutory construction question).

**B**

The government argues that Long is not even entitled to plain error review because he invited the district court to apply U.S.S.G. § 1B1.13 to his case. The government misunderstands the scope of the invited error doctrine.

It is settled that a defendant "may not complain about invited error" on appeal. *United States v. Brown*, 892 F.3d 385, 393 (D.C. Cir. 2018). "Invited error occurs when defense counsel induces the error" through their litigation conduct before the district court. *United States v. Lawrence*, 662 F.3d 551, 557 (D.C. Cir. 2011).

But not every mistake by defense counsel is an invited error. The invited error doctrine is an equitable doctrine that "seeks to avoid rewarding mistakes stemming from a defendant's own *intelligent, deliberate course of conduct* in pursuing his defense." *United States v. Bastian*, 770 F.3d 212, 218 (2d Cir. 2014) (emphasis added; formatting modified). Said another way, "'[s]tatements amounting to invited error are a species of waiver' and generally evince an 'intent' by the speaker to convince 'the district court to do [something that] it would not otherwise have done.'" *United States v. Lerma*, 877 F.3d 628, 632 (5th Cir. 2017) (second alteration in original) (quoting *United States v. Rodebaugh*, 798 F.3d 1281, 1304 (10th Cir. 2015)).

Invited error, then, involves intentional "strategic gambit[s]" designed to induce the trial court to take a desired action. *Bastian*, 770 F.3d at 219. It does not extend to every unintentional "oversight" or innocent mistake that counsel might make. *Id.*; *see also United States v. Coffelt*, 529 F. App'x 636, 639 n.2 (6th Cir. 2013) ("[T]his case is a far cry from a case of gamesmanship or a tactical decision gone wrong, which is the typical factual scenario when the invited-error doctrine is applied.").

We drew that same line in *In re Sealed Case*, 108 F.3d 372 (D.C. Cir. 1997), when we held that the invited error doctrine did not apply where defense counsel incorrectly represented to the court that his client was tied to the distribution of the total quantity of drugs in the case (seven kilograms) rather than the correct smaller number applicable to his actions (four kilograms), *id.* at 373. We concluded that defense counsel's blunder did not amount to invited error because "it [was] not as if counsel made a strategic decision" in telling the court that seven kilograms was the relevant number. *Id.* at 374. Counsel just misspoke due to errors in the presentencing report. *See id.* at 373–374. So while the defendant "acquiesced in what he now claims is error, * * * he did not invite it"—instead, "it was simply a mistake." *Id.* at 374.

In this case, Long's motion laid out the elements for compassionate release under the First Step Act, including the requirement that release be "consistent with applicable policy statements issued by the Sentencing Commission." Mot. for Compassionate Release at 4, *United States v. Long*, No. 10-cr-171 (D.D.C. Sept. 4, 2020), ECF No. 347 (quoting 18 U.S.C. § 3582(c)(1)(A)). The motion then noted that the Commission had addressed compassionate release in its existing policy statement, U.S.S.G. § 1B1.13, and quoted its factors, including that the defendant "pose[] no danger to the safety of any person

or the community," Mot. for Compassionate Release, *supra*, at 4 (citing U.S.S.G. § 1B1.13(2)). Other than that, Long's counsel did not mention the policy statement or advocate for its application to his case.

That error was a mere mistake, not a strategy or tactic. The motion simply referenced the existing policy statement, as it was the only one to be found. But counsel never affirmatively argued that the statement was applicable to defendant motions under the First Step Act nor urged the district court to apply it as controlling. In fact, Long's motion did not treat the policy statement's dangerousness criterion as relevant because it never addressed dangerousness at all. *See* App. 61–71. Nothing in that reference to the policy provision suggests that Long meant to mislead the district court or to strategically induce the district court to enforce an unargued criterion against him.

In fact, it was the government that expressly urged the district court to apply the policy statement in spite of the First Step Act's revisions to the compassionate release statute. Opp. to Mot. for Compassionate Release at 7 n.1, *Long*, No. 10-cr-171 (D.D.C. Sept. 17, 2020), ECF No. 349 ("[T]he policy statement applies to motions filed by defendants as well."). And it was the government that encouraged the district court to resolve the motion based on the policy statement's dangerousness factor alone. *See id.* at 10. In other words, the government provided the district court with all of the ammunition it needed to deny Long's motion on the basis of the policy statement's dangerousness criterion. Nothing in the record remotely suggests that the outcome would have changed if Long had omitted reciting the policy statement in his motion.

Finding no invited error, we apply the plain error standard to Long's argument on appeal that U.S.S.G. § 1B1.13 is inapplicable to his application for compassionate relief.

**IV**

Long argues that the district court erred in relying upon the Sentencing Commission's pre–First Step Act policy statement to deny his motion for compassionate release. More specifically, he contends that the district court should not have treated as controlling the policy statement's requirement that release be denied if he remained "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Long reasons that Section 1B1.13 of the Sentencing Guidelines is not an "applicable policy statement" within the meaning of 18 U.S.C. § 3582(c)(1)(A) because it predates the First Step Act and so speaks only to motions for compassionate release filed by the Director of the Bureau of Prisons.

Long is correct, and that error was plain.

**A**

**1**

Under the First Step Act, courts must apply any "applicable policy statements" issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A). As seven circuit courts have ruled, U.S.S.G. § 1B1.13 is not "applicable" to defendant-filed motions for compassionate release under the First Step Act. *See United States v. Brooker*, 976 F.3d 228, 235 (2d Cir. 2020); *United States v. McCoy*, 981 F.3d 271, 282 (4th Cir. 2020); *United States v. Shkambi*, 993 F.3d 388, 392–393 (5th Cir. 2021); *United States v. Jones*, 980 F.3d 1098, 1109–1111 (6th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180–1181 (7th Cir. 2020); *United States v. Aruda*, 993 F.3d

797, 802 (9th Cir. 2021); *United States v. McGee*, 992 F.3d 1035, 1050 (10th Cir. 2021). *But see United States v. Bryant*, --- F.3d ----, 2021 WL 1827158, at *1–16 (11th Cir. May 7, 2021).

The policy statement's inapplicability is plain on its face. By its terms, the policy statement applies only to motions for compassionate release filed by the Bureau of Prisons, not by defendants. *See* U.S.S.G. § 1B1.13 ("Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(a)(1) * * * ."); *McCoy*, 981 F.3d at 282 (Section 1B1.13's "very first sentence constrains the entire policy statement to motions filed solely by the [Bureau of Prisons], and not by defendants themselves.") (citation omitted; formatting modified).

The Sentencing Commission's accompanying commentary drives the point home: "A reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons pursuant to 18 U.S.C. § 3582(c)(1)(A)." U.S.S.G. § 1B1.13, Application Note 4; *see also McCoy*, 981 F.3d at 282 (Note 4 "confirm[s]" the inapplicability of U.S.S.G. § 1B1.13's policy statement to defendant-filed motions). And the commentary to the Guidelines, unless it is inconsistent with the Guidelines' plain text (which no one argues here), is authoritative. *Stinson v. United States*, 508 U.S. 36, 38 (1993).

The Sentencing Commission, for its part, has never suggested that its existing policy statement applies to defendant motions under the First Step Act. The Commission, in fact, has issued no policy statement applicable to the First Step Act because it has lacked a quorum since shortly after that Act's passage.

In short, if a compassionate release motion is not brought by the Director of the Bureau of Prisons, U.S.S.G. § 1B1.13, by its own terms, is not applicable. *Brooker*, 976 F.3d at 236.

**2**

None of the government's counterarguments succeed.

First, the government says that we should disregard the plain language of the policy statement and hold that the policy statement is applicable to defendant-filed motions because, in its view, Congress did not mean to "divest[] § 1B1.13 from its well-established role as the applicable policy statement governing all compassionate release motions." Gov't Mem. 17.

That is a no go. Courts have no license under the First Step Act to perform "quick judicial surgery on [U.S.S.G.] § 1B1.13, * * * editing out the language" that expressly confines its operation to motions filed by the Bureau of Prisons. *McCoy*, 981 F.2d at 282. There is no ambiguity in the policy statement's scope, and "[w]e cannot replace the actual text with speculation as to Congress' intent." *Magwood v. Patterson*, 561 U.S. 320, 334 (2010).

Second, the government invokes the presumption that Congress legislates against and preserves existing law and background understandings. *See* Gov't Mem. 18–20 (citing *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 184–185 (1988) and *United States v. Wilson*, 290 F.3d 347, 356 (D.C. Cir. 2002)).

But that canon of construction gets the government nowhere because we would equally have to presume that Congress was aware that the preexisting policy statement applied exclusively to motions filed by the Bureau of Prisons.

The presumption that Congress knows what existing law says means just that: Congress knows what the policy statement says. And what it does not say.

Anyhow, the government has the order of operations exactly backwards. The policy statements of the Sentencing Commission are not background understandings against which Congress legislates. They flow from and are responsive to Congress's changes to the law. *See* 28 U.S.C. § 994(a)(2)(C) (authorizing the Commission to promulgate "general policy statements" that in its view would "further the purposes set forth in" 18 U.S.C. § 3553(a)(2), including "the appropriate use of * * * the sentence modification provisions set forth in" Section 3582(c)). So under this scheme, Congress leads and the Commission follows. Any change by Congress to the substantive reach of the statutory sentencing scheme may rightly be expected to result in a change to the policy statements guiding those statutes' implementation.

Third, the government argues that "it would be absurd * * * to conclude that Congress and the Commission intended for the dangerousness requirement to apply or not based on who filed the motion[.]" Gov't Mem. 20.

Hardly. To begin with, courts may not use the absurdity canon to set aside plain text unless "the absurdity and injustice of applying the provision to the case[] would be so monstrous that all mankind would, without hesitation, unite in rejecting the application." *Pirie v. Chicago Title & Trust Co.*, 182 U.S. 438, 452 (1901) (quoting *Sturges v. Crowninshield*, 17 U.S. (4. Wheat) 122, 203 (1819) (Marshall, C.J.)); *see also Stovic v. Railroad Ret. Board*, 826 F.3d 500, 505 (D.C. Cir. 2016) (same).

No such absurdity is afoot here. For defendant motions under the First Step Act, courts still must consider and weigh

the factors laid out in Section 3553(a), which include the need "to protect the public from further crimes of the defendant" and to ensure "adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(B) & (C); *see* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to weigh the Section 3553 factors in compassionate release decisions whether filed by the government or the Bureau of Prisons). So even without the policy statement, courts will still consider the anticipated effect of compassionate release on crime and public safety for defendant-filed motions as part of their weighing of relevant considerations.

All that the pre–First Step Act policy statement did was make that dangerousness factor a rigid precondition to release. Surely all humankind would not recoil in horror at the prospect of the same Congress that wished to expand access to compassionate release also trusting courts to balance all relevant considerations as part of a release decision, including the ability to reduce the risk of criminality by imposing strict supervised release conditions.

Apparently Congress would not blanch at the idea either. When it wanted to make a lack of dangerousness an explicit and inflexible precondition to release, it knew how to say so. As it did in the very next provision of Section 3582(c)(1)(A). For compassionate release motions based on the age of the defendant (70 or more years old), and not on extraordinary or compelling reasons, Congress has expressly proscribed courts from ordering release unless the Director of the Bureau has certified that "the defendant is not a danger to the safety of any other person or the community, as provided under [S]ection 3142(g)." 18 U.S.C. § 3582(c)(1)(A)(ii).

Anyhow, how absurd can Long's reading of the First Step Act really be given that seven other circuits have already adopted it?

**B**

Of course, finding error in the district court's reliance on the U.S.S.G. § 1B1.13 policy statement is just the first step down the road for Long. Because Long did not preserve this argument below, we must also find that the error was "plain." *See United States v. Terrell*, 696 F.3d 1257, 1260 (D.C. Cir. 2012). With the benefit of hindsight that the district court did not enjoy, we find reliance on the policy statement and its dangerousness criterion to have been plain error.

The easiest case for plain error is when "a clear precedent in the Supreme Court or this circuit establishe[s] [a decision's] erroneous character." *Terrell*, 696 F.3d at 1260. While seven circuit court decisions go a long way, neither the Supreme Court nor this circuit has yet spoken on the inapplicability of the pre–First Step Act policy statement.

But that is not the universe of plain error. Even in the absence of binding precedent, "an error can be plain if it violates an 'absolutely clear' legal norm, 'for example, because of the clarity of a statutory provision.'" *In re Sealed Case*, 573 F.3d 844, 851 (D.C. Cir. 2009) (quoting *United States v. Merlos*, 8 F.3d 48, 51 (D.C. Cir. 1993)); *see also United States v. Abney*, 957 F.3d 241, 252 (D.C. Cir. 2020); *United States v. Joaquin*, 326 F.3d 1287, 1293 (D.C. Cir. 2003).

This case fits that bill. The plain language of the existing policy statement is applicable only to compassionate release motions filed by the Director of the Bureau of Prisons, and it is facially inapplicable to those motions filed by defendants under the later-enacted First Step Act.

The error is at least as plain here as it was in *Sealed Case* and *Joaquin*. In both of those cases, we found that the relevant statutory and Sentencing Guidelines texts, respectively, were sufficiently clear that the district court's contrary interpretation was plain error—even though other circuits had taken the opposite view. *See Sealed Case*, 573 F.3d at 851–852; *Joaquin*, 326 F.3d at 1292–1293. Here, the score in favor of Long's interpretation is seven circuits to one.

The government points to an unpublished and non-precedential decision of the Third Circuit in *United States v. Doe*, 833 F. App'x 366 (3d Cir. 2020). But the court of appeals in that case did not address the applicability of U.S.S.G. § 1B1.13 at all. Nor did the defendant there raise that issue on appeal. *See* Brief for John Doe, *Doe*, 833 F. App'x 366 (3d Cir. Aug. 17, 2020) (No. 20-2650), ECF No. 18. All the Third Circuit held was that, despite the defendant's "challeng[es to] the District Court's assessment of his danger to the community under § 3142(g) and the sentencing factors set forth in § 3553(a)[,]" the district court did not abuse its discretion in denying compassionate release. *Doe*, 833 F. App'x at 368.[2]

---

[2] At the time the government filed its memorandum in this court, unpublished decisions in two other circuits had applied the existing policy statement to defendant-filed motions for compassionate release without analyzing the applicability question. Gov't Mem. 16–17 (citing *United States v. Bell*, 823 F. App'x 283 (5th Cir. 2020) and *United States v. Saldana*, 807 F. App'x 816 (10th Cir. 2020)). Both of those circuits have since ruled in precedential decisions that the policy statement is not "applicable" within the meaning of the First Step Act, 18 U.S.C. § 3582(c)(1)(A). *See Shkambi*, 993 F.3d at 392–393; *McGee*, 992 F.3d at 1050.

Recently, a divided decision of the Eleventh Circuit ruled that U.S.S.G. § 1B1.13 is applicable to defendant motions for compassionate release. *Bryant*, 2021 WL 1827158, at *6. The court reasoned that the pre–First Step Act policy statement is "capable of being applied" to those motions, and so it must be "applicable" within the meaning of 18 U.S.C. § 3582(c)(1)(A). *Id.* at *6–7.

But that opinion's reliance on dictionary definitions of "applicable" misses the forest for a tree. The decision ignores all of the other words in Section 1B1.13 that already state in plain and clear terms when the policy statement applies: "Upon motion of the Director of the Bureau of Prisons[.]" U.S.S.G. § 1B1.13. As Judge Martin explained, the opinion's "dictionary-based theory about when a policy statement may be 'applicable' flies in the face of the statement's plain text that tells us when it is actually 'applicable.'" *Bryant*, 2021 WL 1827158, at *20 (Martin, J., dissenting). In other words, this policy statement "is capable of being applied" to Long's motion, *id.* at *6, only if we take an eraser to the words that say the opposite.

The Eleventh Circuit backhanded the policy statement's express text as "prefatory" language that just "orients the reader by paraphrasing the statute as it existed at the time the policy statement was enacted." *Bryant*, 2021 WL 1827158, at *11. Not so. The opening language is not mere prologue. *Cf., e.g.*, *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1977–1978 (2016). Quite the opposite, the policy statement's first words—"Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A)"—set out a rigid and indispensable condition of release: that the Bureau of Prisons itself agrees that relief is warranted. In that way, the beginning of the policy statement puts into effect Congress's (now superseded) command that motions for compassionate

release may be filed only by the Bureau of Prisons. *See United States v. Cogdell*, 154 F. App'x 162, 164 (11th Cir. 2005) (defendant did not qualify for downward adjustment under U.S.S.G. § 3E1.1(b) because such an adjustment could be granted only "upon motion of the government" and the government did not so move). To dismiss these words as inert preface is to ignore a direct textual instruction and central statutory feature of the compassionate release scheme prior to the First Step Act.

That essential function of Section 1B1.13's opening words makes stark the policy statement's inapplicability to the post–First Step Act world where Congress took compassionate release motions out of the Bureau of Prisons' exclusive control. Those words likewise highlight that Section 1B1.13 does not reflect any policy statement or policy judgment by the Sentencing Commission about how compassionate release decisions should be made under the First Step Act, in which a Congress dissatisfied with the stinginess of compassionate release grants deliberately broadened its availability.

At bottom, for a policy statement to be "applicable," it must, at a minimum, take account of the relevant legislation and the congressional policy that it embodies. Section 1B1.13 does not do that. And so the problem with the Eleventh Circuit's approach is that it asked the wrong question. The issue here is not the *meaning* of "applicable," but rather whether the pre–First Step Act policy statement *is* applicable. It plainly is not.

The district court's error, while plain, was understandable. Long did not present the question of the policy statement's applicability to the district court, while the government argued that it was applicable. So the district court did not have the benefit of adversarial briefing on the question. And at the time,

some district courts, including within this circuit, had reached the same conclusion that the district court did here. *See, e.g.*, *United States v. Goldberg*, No. 12-cr-180 (BAH), 2020 WL 1853298 (D.D.C. April 13, 2020); *United States v. Alonzo*, --- F. Supp. 3d ---- , 2021 WL 327571 (E.D. Tex. Feb. 1, 2021). *But see United States v. Quinn*, 467 F. Supp. 3d 824, 830 (N.D. Cal. 2020); *United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019). None of the circuit courts had yet weighed in.

The plainness of an error, however, is evaluated at the time of appellate review, not at the time the district court ruled. *Henderson v. United States*, 568 U.S. 266, 279 (2013). Under that test, the combination of clear text and overwhelming and vigorously reasoned authority from seven other circuits (and the unpersuasiveness of the Eleventh Circuit's analysis) make the error plain.

## C

To survive plain error review, Long must demonstrate not just a plain error, but also that the error affected his "substantial rights," *Johnson*, 520 U.S. at 468. Usually, an error will affect the defendant's substantial rights if there is a "'reasonable probability that, but for the error,' the outcome of the proceeding would have been different." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016) (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 76, 82 (2004)). In other words, Long must show prejudice. *Puckett*, 556 U.S. at 141. Long has met that task.

In *Molina-Martinez*, the Supreme Court held that an error by the district court in calculating a range under the Sentencing Guidelines, "whether or not the defendant's ultimate sentence falls within the correct range[,] * * * can, and most often will, be sufficient to show a reasonable probability of a different

outcome absent the error" and, thus, prejudice under the plain error standard. 136 S. Ct. at 1345. This is because the Guidelines are the "essential framework" and "lodestar" for sentencing proceedings. *Id.* at 1345–1346. Because of "the centrality of the Guidelines in the sentencing process," the Supreme Court concluded, the district court's misapplication of the Guidelines to determine a sentencing range should generally suffice to establish prejudice, even if "there is no other evidence that the sentencing outcome would have been different had the correct range been used." *Id.* at 1346.

The showing of prejudice is even starker here than in *Molina-Martinez*. While the district court in *Molina-Martinez* could have departed from the miscalculated advisory Guidelines range, *United States v. Booker*, 543 U.S. 220, 264 (2005), where applicable, the policy statement *requires* courts to deny compassionate release unless they affirmatively find that "the defendant is not a danger to the safety of any other person or to the community," U.S.S.G. § 1B1.13(2). *Cf. Dillon*, 560 U.S. at 819, 828–830 (holding the Sentencing Commission's policy statements are binding on a court considering a motion for sentencing reduction under § 3582(c)(2)). In other words, the court mistakenly believed that the policy statement's lack-of-dangerousness prerequisite gave it no choice but to deny Long's motion, and that erroneous premise formed both the beginning and the end of its inquiry.

In that way, the district court's mistaken application of an otherwise mandatory Sentencing Guidelines prohibition affected Long's sentencing outcome at least if not more "systemic[ally]" than a discretionary-but-frequently-adopted Guidelines range. *See Molina-Martinez*, 136 S. Ct. at 1346. And as a result, the court never had an opportunity to evaluate whether release was warranted upon a balancing of the

Section 3553(a) factors and consideration of release restrictions.

The government argues that there was no prejudice because the district court would have considered Long's dangerousness under the Section 3553(a) balancing framework and likely would have denied the motion on that basis.

But Section 3553(a) requires a discretionary balancing of multiple factors, not just dangerousness. Under that provision, courts weigh (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the Guidelines; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

Because the district court treated U.S.S.G. § 1B1.13's dangerousness criterion as a categorical bar on relief, "the record is silent as to what the district court might have done" upon balancing all of those factors as an exercise of informed discretion, *Molina-Martinez*, 136 S. Ct. at 1347. And the discretion afforded by Section 3553(a) is the district court's to

exercise in the first instance. *See United States v. Peyton*, 745 F.3d 546, 557 (D.C. Cir. 2014) (noting that "[w]e are a court of review, not of first view" and remanding to the district court for consideration of issue it had "no occasion to address"); *Gunn*, 980 F.3d at 1181 (remanding to district court for resolution of compassionate release motion under statutory standard after holding that U.S.S.G. § 1B1.13 is inapplicable). *See generally Pullman-Standard v. Swint*, 456 U.S. 273, 291 (1982) (When a district court "has failed to make a finding because of an erroneous view of the law, the usual rule is that there should be a remand for further proceedings to permit the trial court to make the missing findings.").

Because "the record is silent as to what the district court might have done had it considered the correct" factors, the district court's reliance on an incorrect Guidelines policy statement is "suffic[ient] to show an effect on [Long's] substantial rights." *Molina-Martinez*, 136 S. Ct. at 1347.

## D

Finally, we hold that the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. Under this factor, "[w]e have repeatedly opted to correct plain sentencing errors that, if left uncorrected, would result in a defendant serving a longer sentence." *Sealed Case*, 573 F.3d at 853.

In a similar vein, Long has sought compassionate release asserting extraordinary and compelling circumstances for expeditious relief. If we do not correct this error, we would permanently close the door on any prospect of that release, and even on the district court's discretionary consideration of all the factors bearing on such a decision. As the Supreme Court has explained in an analogous circumstance, the "risk of

unnecessary deprivation of liberty particularly undermines the fairness, integrity, or public reputation of judicial proceedings in the context of a plain Guidelines error because of the role the district court plays" in applying the Guidelines "and the relative ease of correcting the error." *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1908 (2018). Indeed, "what reasonable citizen wouldn't bear a rightly diminished view of the judicial process and its integrity if courts refused to correct obvious errors of their own devise that threaten to require individuals to linger longer in federal prison than the law demands?" *Id.* at 1908 (quoting *United States v. Sabillon–Umana*, 772 F.3d 1328, 1333–1334 (10th Cir. 2014) (Gorsuch, J.)).

## V

For all of those reasons, we vacate the judgment of the district court and remand for consideration of Long's compassionate relief application under the correct legal standard.

*So ordered.*